In the Supreme Court of Georgia

Decided:   Novemberr 16, 2015

S15A0720. THE STATE v. CASH et al.

THOMPSON, Chief Justice.

The State appeals the trial court's grant of new trials to appellees, Elgerie

Cash and her daughter, Jennifer Weathington, who were tried together in

Paulding County Superior Court and found guilty of malice murder, felony

murder, two counts of aggravated assault, and possession of a firearm during the

commission of a felony in connection with the shooting death of Lennis Jones.[1]

---

[1] Jones was killed on May 30, 2011. The appellees were indicted on August 27, 2012. Appellees were tried jointly before a jury on October 15 - 25, 2013. On October 25, 2013, the jury returned verdicts of guilty on all counts against both appellees, and each was sentenced to a term of imprisonment for life for malice murder and a consecutive term of imprisonment for five years for possession of a firearm during the commission of a felony. The verdicts against appellees for felony murder were vacated by operation of law, see Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and their aggravated assault verdicts were merged into their malice murder convictions. Appellee Cash filed a motion for new trial on October 29, 2013, and amended motions for new trial on December 16, 2013 and May 13, 2014. Appellee Weathington filed a motion for new trial on November 1, 2013, and amended motions for new trial on May12, 2014, and May 13, 2014. Following a joint hearing on these motions, the trial court entered separate orders on May 13, 2014, granting each appellee a new trial. Thereafter, on May 19, 2014, the trial court issued a joint amended order granting new trials to the appellees and vacating their convictions and sentences. The State filed a timely notice of appeal seeking review of the trial court's orders granting new trials to appellees, as well as of the trial court's order denying a motion to recuse that the State filed shortly before the motion for new trial hearing. Appellees filed cross-appeals, and the appeal and cross-appeals were docketed in this Court for the April 2015 term. On February 10, 2015, this Court allowed the appellees to withdraw their cross-appeals.

Appellees, who claimed the victim accidentally shot himself, each filed a motion for new trial. Four days prior to the scheduled hearing on the new trial motions, the State filed a motion to recuse the trial judge. The trial judge dismissed the State's recusal motion as legally insufficient without referring it to another judge and orally denied the State's request for a certificate of immediate review. The State immediately filed a notice of direct appeal, which the trial court dismissed as frivolous and dilatory. After denying the State's request for a continuance, the trial court proceeded with the motion for new trial hearing as scheduled.

Following a two-day hearing, the trial court granted both appellees' motions for new trial, finding they received ineffective assistance of counsel at trial and that the verdicts were contrary to the principles of justice and equity and decidedly and strongly against the weight of the evidence. Thereafter, the State filed a notice of appeal, appealing the trial court's orders granting appellees' motions for new trial, as well as its order denying the State's motion to recuse. For the reasons which follow, we dismiss the State's appeal of the denial of its motion to recuse and affirm the trial court's grant of new trials to

2

appellees.[2]

1. Appellees contend that this Court does not have jurisdiction to review the trial court's order denying the State's motion to recuse. We agree.

(a) Appeals by the State in criminal cases are construed strictly against the State and "the State may not appeal *any* issue in a criminal case, whether by direct or discretionary appeal, unless that issue is listed in OCGA § 5-7-1." State v. Martin, 278 Ga. 418, 419 (603 SE2d 249) (2004) (emphasis in original). Accord State v. Johnson, 292 Ga. 409, 410-411 (738 SE2d 86) (2013); State v. Caffee, 291 Ga. 31, 33 (728 SE2d 171) (2012). Thus, in Martin, we held that the State could not appeal the denial of its motion to recuse the trial judge, because OCGA § 5-7-1, at that time, did not list such orders as appealable by the State. See Martin, 278 Ga. at 419. Accord Ritter v. State, 269 Ga. 884, 885-886 (506 SE2d 857) (1998) (dismissing the State's direct appeal of the denial of its motion to recuse the trial judge).

---

[2] Unlike the State's appeal of the order denying its motion to recuse, the State's direct appeal of the orders granting new trials to appellees has no jurisdictional defect. See OCGA § 5-7-1 (a) (8) (providing that the State has a right to appeal "[f]rom an order, decision, or judgment of a court granting a motion for new trial or an extraordinary motion for new trial"); OCGA § 5-7-2 (providing that "[f]or purposes of this Code section, the granting of a motion for new trial or an extraordinary motion for new trial shall be considered a final order," thus exempting the State from the requirement of OCGA § 5-7-2 (a) that it obtain a certificate of immediate review to appeal orders that are appealable under Chapter 7 but are not final).

After our 2004 decision in Martin, the General Assembly amended § 5-7-1 in 2005 to permit the State to appeal "from an order, decision, or judgment denying a motion by the state to recuse or disqualify a judge *made and ruled upon prior to the defendant being put in jeopardy.*" See OCGA § 5-7-1 (a) (9) (emphasis added); Ga. Law 2005, p. 20, § 3. Here, because the State did not file its motion to recuse until after appellees' convictions and shortly before the hearing on their motions for new trial, jeopardy had attached, and the State thus does not have a right to appeal under OCGA § 5-7-1. See Harvey v. State, 296 Ga. 823, 830 (770 SE2d 840) (2015) (holding that jeopardy attaches "[o]nce a jury is impaneled and sworn"). See also State v. Osborne, 330 Ga. App. 688, 689-690 (769 SE2d 115) (2015) (holding that, in a case in which the State filed a motion to recuse the trial judge before jeopardy had attached and the trial judge denied the motion, the State's direct appeal had to be dismissed because the order denying the State's motion was interlocutory and the State did not obtain a certificate of immediate review under OCGA § 5-7-2 (a)).

(b) The State argues that, even if its appeal of the recusal order is not proper under § 5-7-1 (a) (9), this Court should nonetheless exercise jurisdiction over the State's appeal of that order under the collateral order

4

doctrine.

We must resolve this issue against the State based on the well-settled principle that "the right to appeal, even in criminal cases, is not constitutional but 'purely a creature of statute.'" Sosniak v. State, 292 Ga. 35, 44 n.4 (734 SE2d 362) (2012) (Nahmias, J., concurring) (quoting Abney v. United States, 431 U. S. 651, 656 (97 SCt 2034, 52 LE2d 651) (1977)). Accord State v. Smith, 268 Ga. 75, 75 (485 SE2d 491) (1997). Appeals from orders that satisfy the requirements of the collateral order doctrine are directly appealable because they are considered to come within the terms of a relevant statute that authorizes appeals from final judgments. See Sosniak, 292 Ga. at 37 (explaining that the order sought to be appealed in that case would be appealable as a "final judgment" under § 5-6-34 (a) (1) if it satisfied the requirements of the collateral order doctrine); Abney, 431 U. S. at 656 (holding that an order denying a motion to dismiss an indictment on double jeopardy grounds satisfied the requirements of the collateral order doctrine and thus could be appealed under 28 USC § 1291, which authorizes direct appeals in federal cases "from all final decisions of the district courts"). As explained by Justice Nahmias in his concurrence in Sosniak,

5

Although sometimes referred to as an "exception" to statutes allowing a direct appeal only from the final judgment in a case, the collateral order doctrine actually reflects a "practical rather than a technical construction" of such statutes, one that recognizes that a very "small class" of interlocutory rulings are effectively final in that they "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U. S. 541, 546 (69 SC 1221, 93 LE 1528) (1949).

Sosniak, 292 Ga. at 44 n.4 (Nahmias, J., concurring).

As explained above, an order that satisfies the requirements of the collateral order doctrine is considered to be effectively final and would be appealable because it comes within the terms of a relevant statutory right to appeal final judgments. Here, OCGA § 5-7-1, which we have repeatedly held lists the types of trial court rulings that the State may appeal, see Johnson, 292 Ga. at 410-411, does not provide for appeals by the State from final judgments. Moreover, although § 5-6-34 (a) (1) authorizes appeals from "all final judgments," the State has no right to appeal under OCGA § 5-6-34 or any other provision of the Appellate Practice Act, see OCGA §§ 5-6-30 to 5-6-51, "as that Act grants the right of appeal only to 'either party in any civil case and the defendant in any criminal proceeding.'" Smith, 268 Ga. at 76 (quoting OCGA

6

§ 5-6-33 (a) (1)).  Further, OCGA § 5-6-33 (b) says that "[t]his Code section shall not affect Chapter 7 of this title," showing that the General Assembly was well aware of the statutory scheme of appeals that it had created for the State and that it intended for the State's right to appeal to be governed by Chapter 7 of Title 5.

For these reasons, the State has no right to appeal the order denying its motion to recuse under the collateral order doctrine even if the order were determined to satisfy the requirements of the doctrine.  Accord Osborne, 330 Ga. App. at 691-692 (holding that the State's appeal of the denial of its motion to recuse was not appealable under the collateral order doctrine and that to apply the doctrine "would render meaningless those parts of the existing statutory scheme which govern the state's appeal of the denial of a motion to recuse a judge").

(c)  Finally, because there is no constitutional right to appeal, there is no merit to the State's argument that it violates its right to due process to deny it an opportunity to appeal the denial of its recusal motion.  See Sosniak, 292 Ga. at 44 n.4 (Nahmias, J., concurring); Smith, 268 Ga. at 75.  See also South Carolina v. Katzenbach, 383 U. S. 301, 323-24 (86 SCt 803, 15 LE2d 769)

7

(1966) (holding that the State of South Carolina was not a "person" under the Due Process Clause of the Fifth Amendment).

For the foregoing reasons, we dismiss the State's appeal of the trial court's order denying its motion to recuse.[3]

2. The State claims that the trial court erred in granting the appellees' motions for new trial based on the "general grounds." See OCGA §§ 5-5-20 and 5-5-21.[4]

(a) The State first argues that the trial court erred in failing to rule on the general grounds of appellees' motions for new trial before it heard evidence – which was relevant to appellees' claims of ineffective assistance of trial counsel – at the motion for new trial hearing that was not presented to the

---

[3] We note that "OCGA § 5-6-34 (d) provides for review of all rulings that are raised on appeal and may affect the case below, only '[w]here an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section.'" State v. Lynch, 286 Ga. 98, 102 (686 SE2d 244) (2009). The State does not rely on § 5-6-34 (d) to argue that we have authority to review its appeal of the order denying its motion to recuse because its appeal of the order granting new trials to appellees is properly before us, see footnote 2 above. If it did so, the argument would have no merit both for the reasons explained in Lynch, 286 Ga. at 102-103, and because the Appellate Practice Act "grants the right of appeal only to 'either party in any civil case and the defendant in any criminal proceeding.'" Smith, 268 Ga. at 76 (quoting OCGA § 5-6-33 (a) (1)).

[4] OCGA § 5-5-20 grants a trial judge the discretion to grant a new trial when it finds that "the verdict of a jury is . . . contrary to evidence and the principles of justice and equity." OCGA § 5-5-21 grants a trial judge the discretion to grant a new trial "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

jury. The State cites no authority for its proposed rule, and there is no such requirement in the statutory provisions that govern motions for new trial. See OCGA §§ 5-5-1 to 5-5-51. Further, the General Assembly has provided grounds for motions for new trial that do not require new evidence, see OCGA §§ 5-5-20 and 5-5-21 (the general grounds), and some grounds that do or may require new evidence, see OCGA § 5-5-23 (saying that a new trial may be granted based on newly discovered evidence); OCGA § 5-5-25 (saying that "[i]n all motions for a new trial on other grounds not provided for in this Code, the presiding judge must exercise a sound legal discretion in granting or refusing the same according to the provisions of the common law and practice of the courts"); State v. Reynolds, 332 Ga. App. 818, 820 (775 SE2d 187) (2015) (explaining that a claim of ineffective assistance of counsel – which may involve the introduction of evidence not heard by the jury – is a ground for motion for new trial permitted under § 5-5-25). In view of these various grounds for a motion for new trial and because OCGA § 5-5-40 says that a motion for new trial "may be heard at any time" (and not that the grounds that may or do require new evidence must be heard after a hearing and ruling on the general grounds), we decline to adopt a rule that requires trial courts to hold multiple hearings on

9

motions for new trial.

(b) To the extent that the State argues that the trial court erred in granting a new trial on the general grounds based on its consideration of the evidence introduced at the motion for new trial hearing that was not heard by the jury, the record does not show that the trial court relied on that evidence. During its oral ruling at the motion for new trial hearing, the trial court clearly relied on the evidence introduced at trial, saying that in assessing the credibility of the witnesses and the conflict in the evidence, he would grant new trials on the general grounds. Further, in its order granting a new trial, the trial court said it was doing so on the general grounds, citing OCGA §§ 5-5-20 and 5-5-21, without referring to any consideration of new evidence presented at the motion for new trial hearing.

(c) The State also argues that the trial court abused its discretion in granting a motion for new trial on the general grounds. We disagree.

With regard to the trial court's role in evaluating a motion for new trial on the general grounds, we have said that:

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA §

10

5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial – commonly known as the "general grounds" – require the trial judge to exercise a "broad discretion to sit as a 'thirteenth juror.'" In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. Although the discretion of a trial judge to award a new trial on the general grounds is not boundless – it is, after all, a discretion that "should be exercised with caution [and] invoked only in exceptional cases in which the evidence preponderates heavily against the verdict," – it nevertheless is, generally speaking, a substantial discretion.

Allen v. State, 296 Ga. 738, 740 (770 SE2d 625) (2015) (citations omitted).

On review, "'[t]he first grant of a new trial on the general grounds will ordinarily not be disturbed by the appellate court absent an abuse of discretion in that the evidence demanded the verdict rendered.'" O'Neal v. State, 285 Ga. 361, 363 (677 SE2d 90) (2009) (citation omitted). See OCGA § 5-5-50 ("The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge.").

Here, the evidence shows that about 2:30 p.m. on May 30, 2011, Cash

called 911 reporting a shooting at her home. The first police officer that arrived on the crime scene did so within one to two minutes of the 911 call. Cash was standing on the front porch of the home, crying, screaming for help, and saying that it was an accident. Cash directed the officer to an upstairs bedroom, where he found Weathington cradling the victim's head with a towel wrapped around it. Weathington was hysterical, crying for help, and telling the victim to "hang on." The victim had a gunshot wound to the head but was still alive. A gun was on the floor by his feet. Cash said that she showed the victim and Weathington a handgun that she had recently purchased; that "she pulled on it and nothing came out and the gun went off, firing a round through the wall into the backyard." The slide was then pulled several times, "emptying out some live rounds." "That's when [the victim] grabbed the gun," saying it was not loaded. Cash told him that it was, "because she could see the brass round through the top of the slide." The victim then pointed the gun at his head and pulled the trigger. The gun fired, hitting him on the right side of the head. The victim died later that day from the gunshot wound. Weathington's statement was consistent with that of Cash. Appellees both were upset that paramedics were not the first to respond to the 911 call and that the paramedics who did arrive were going to

12

take the victim to Kennestone Hospital instead of Grady.

Although there was a hat at the crime scene, the police did not take it on the day of the crime despite a thorough investigation of the crime scene. It was recovered a week later, after police noticed it in a photograph of the crime scene they were reviewing. Before it was recovered, Cash had at one time placed it in the garbage but then retrieved it; at another time, she had put it in her laundry room with some dirty clothes. The hat had the victim's blood on it, as well as a bullet hole in it that matched the location of the entry wound to the victim's head. Forensic testing also showed that the web of the victim's right hand had gunshot residue on it.[5]

The medical examiner had concluded his autopsy before the hat was discovered and the testing of it completed. He concluded that the victim was shot from more than 18 inches based on the lack of stippling and gunshot residue on the victim. Based on these findings, he concluded that the victim did not shoot himself. At trial, the medical examiner acknowledged that a hat would have captured some evidentiary material from the gunshot and that Cash's

---

[5] Although the victim was ordinarily left handed, there was evidence that he used his right hand to perform many tasks and that on at least one previous occasion, he fired a pistol with his right hand.

movement of the hat could have caused some evidentiary material to be lost. He maintained, however, that the victim was not wearing the hat when he was shot. He explained that he did not see biologic material on the hat when he examined it and that he would have expected the hat to have that type of material on it if the victim had been wearing it.

In ruling on the general grounds at the motion for new trial hearing, the trial court noted that the crime occurred on a "holiday weekend with the neighbors home"; that appellees immediately called for help; that the investigators failed to take the hat immediately; that the medical examiner did not have the hat to consider at the time of his initial autopsy; and that the hat had the victim's blood on it. Right after these statements, the trial court said: "So I will – in the role of the thirteenth juror, . . . grant a new trial in this case. And I think that based on the conflicts in the evidence, my perception of the credibility of the evidence including the [medical examiner] and others, that my granting a new trial is consistent with the principles of equity and justice."

We conclude that the trial court, who observed the trial and who had the duty to examine the conflicts in the evidence and the credibility of the witnesses in ruling on the general grounds, did not abuse its broad discretion in granting

14

appellees' new trials on the general grounds.[6]

Judgment affirmed in part and case dismissed in part. All the Justices concur.

---

[6]Based on this holding, we need not address the State's argument that the trial court erred in granting a new trial based on its conclusion that trial counsel were constitutionally ineffective.