308 Ga. 806
FINAL COPY

S20A0504. STATE v. ROWE.

BOGGS, Justice.

This case is an appeal by the Department of Corrections (DOC) in the pending death penalty prosecution against Donnie Rowe, Jr., who is accused of double murder during a prison escape. Specifically, the case concerns an order, as modified, by the trial court directing that all records of visits from Rowe's defense team to various prisoners be placed under seal in the legal department of the DOC rather than being maintained in the individual inmates' files. The DOC argues that the order is void because the trial court lacked the inherent authority or personal or subject matter jurisdiction to issue it and because, even if the trial court had the authority to do so, issuing it constituted an abuse of discretion. Additionally, this Court directed the parties to evaluate whether this Court has jurisdiction in light of the provision in OCGA § 5-7-1 limiting appeals by "the State of Georgia" in "criminal cases." For the reasons set forth below,

we conclude that this Court has jurisdiction over this appeal, and we affirm in part and reverse in part the trial court's order regarding the visitation records.

1. Rowe and Ricky Dubose have been indicted for murder and related crimes in connection with the killing of two DOC officers during an escape from a prison van. As part of Rowe's defense, his lawyers and expert witnesses need to interview various inmates, including Rowe and Dubose. The trial court issued several ex parte orders for the defense team to gain access to specific inmates. On August 27, 2019, after Rowe discovered that these ex parte orders were being kept unsealed in the inmates' files, Rowe filed, under seal without serving the DOC, Ex Parte Motion No. 11 to enforce the confidential nature of those visitation orders. Later that same day, the trial court, without prior notice to the DOC, issued an order directing that all ex parte visitation orders be placed in the inmates' files under seal, filed elsewhere under seal, or destroyed.

On September 10, 2019, the DOC sent via e-mail to the trial

court a motion to vacate or reconsider this August 27 order.[1] On September 17, 2019, a hearing was held on the DOC's motion to vacate, with counsel for the DOC present.[2] On October 3, 2019, the trial court filed a Modified Order on Defendant's Ex Parte Motion No. 11, in which the court directed that "any ex parte Orders and the accompanying documents required to perfect the Orders" must be kept under seal in the legal department of the DOC, directed that "[t]he only document to be included in the institutional file of any inmate shall be a form indicating that additional documents exist

---

[1] In the record, this motion appears in an envelope sealed by an order dated November 6, 2019, but the sealing order indicates that the motion was received on September 10, 2019. The actual motion contained in the sealed envelope is stamped as filed on November 6, 2019. However, the remainder of the record on appeal shows that the trial court began considering the motion when it was received.

[2] The DOC notes that it was not served with the ex parte motion that Rowe filed on August 27, 2019, and that it was not given notice of a hearing held on October 15, 2019. Nevertheless, it is undisputed that the modified order now on appeal, which was issued on October 3, 2019, was issued after the DOC, on September 10, 2019, submitted its motion to vacate the original August 27 order on Rowe's motion, that the DOC appeared prior to the issuance of the modified order at a hearing held on September 17, 2019, and that the DOC was given another opportunity to be heard prior to this appeal at a hearing held on October 28, 2019.

under seal in the legal department," and directed that the parties should attempt to reach an agreement on proposed language for a document regarding the visitation records to be placed in inmates' files.[3]

On October 9, 2019, the DOC sent the trial court a notice of appeal, but it was not filed by the clerk at that time.[4] On October 15, 2019, a hearing was held, without any notice to the DOC, in which the trial court and Rowe discussed the DOC's notice of appeal and in which Rowe filed a new motion, Ex Parte Motion No. 15, seeking an ex parte order allowing a specific expert witness access to him at the prison.[5] On October 16, 2019, the DOC's Non-Party Notice of

---

[3] This Modified Order on Defendant's Ex Parte Motion No. 11 is the order on appeal here. At the September 17 hearing held prior to the issuance of the order, the trial court said regarding the duration of the order's effect: "[F]or all practical purposes, it will be forever."

[4] This notice of appeal was marked by the DOC as having been submitted on October 9, 2019, but it was stamped as filed by the clerk on November 16, 2019. However, the discussion at the hearing held on October 15, 2019, makes clear that the trial judge already had the notice of appeal at the hearing but that the original of the notice of appeal had been sent to the trial judge rather than being filed by the clerk.

[5] Ex Parte Motion No. 15 addressing visitation by Rowe's expert was

Appeal, which the trial judge had previously received, was filed by the clerk. Another hearing, this time with notice to and with the appearance of counsel for the DOC, was held on October 28, 2019. Also on October 28, 2019, the DOC filed an Amended Non-Party Notice of Appeal, which again specified only the Modified Order on Defendant's Ex Parte Motion No. 11 as the subject matter of appeal but which added a request that the portions of the record sent up on appeal include any matters pertaining to Ex Parte Motion No. 15 in addition to matters pertaining to Ex Parte Motion No. 11.

The trial court has announced that it will not suspend the trial proceedings while this appeal is pending. The DOC filed in this

---

granted in an order filed on October 28, 2019. The order specified that "the provisions of *ex parte* 11 apply and the Department of Corrections shall file this *ex parte* Order, and any accompanying documents required to perfect the Order, under seal in the office of the Department of Corrections' legal department."The trial court indicated at the hearing on October 28, 2019, that it intended for this order on Motion No. 15 to serve only as authorization for an additional defense team-member to have access to an inmate (Rowe himself) rather than any change to its previously filed Modified Order on Defendant's Ex Parte Motion No. 11 that already contained parallel direction regarding the sealing of records of *any* visits pursuant to an ex parte order.

Court a motion for supersedeas, but this Court denied it.[6]

2. (a) We first address the question posed by this Court to the parties regarding this Court's jurisdiction. See *Hourin v. State*, 301 Ga. 835, 836-837 (1) (804 SE2d 388) (2017) ("[I]t is incumbent upon this Court to inquire into its own jurisdiction even when not contested by the parties."). This Court's concern arose out of OCGA § 5-7-1 et seq., which limits the subject matters that may be appealed by "the State of Georgia" in "criminal cases," which do not include the issue being appealed by the DOC here. See *State v. Cash*, 298 Ga. 90, 91 (1) (a) (779 SE2d 603) (2015) ("Appeals by the State in criminal cases are construed strictly against the State and 'the State may not appeal *any* issue in a criminal case, whether by direct or discretionary appeal, unless that issue is listed in OCGA § 5-7-1.'" (Emphasis in original) (quoting *State v. Martin*, 278 Ga. 418, 419

---

[6] Dubose, as Rowe's co-indictee, filed a motion in this Court seeking leave to intervene in the appeal or, in the alternative, for leave to file an amicus brief. This Court denied the motion to intervene. This Court dismissed the request to file an amicus brief as moot because Dubose could file an amicus brief without leave from the Court, in light of the version of this Court's Rule 23 that is applicable to this case based on its docketing date; however, Dubose has not filed any such brief.

(603 SE2d 249) (2004))). We conclude that OCGA § 5-7-1 et seq. applies to appeals brought on behalf of the State by the prosecuting attorney responsible for the criminal case — usually the district attorney or solicitor and sometimes the Attorney General. See Ga. Const. of 1983, Art. VI, Sec. VIII, Par. I (d) ("It shall be the duty of the district attorney to represent the state in all criminal cases in the superior court of such district attorney's circuit and in all cases appealed from the superior court and the juvenile courts of that circuit to the Supreme Court and the Court of Appeals and to perform such other duties as shall be required by law."); OCGA §§ 5-7-1 (a) (5) (B) (referring to the "prosecuting attorney"); 15-18-6 (4), (6) (describing the prosecutorial and appellate duties of the district attorneys); 15-18-66 (a) (3), (4) (describing the prosecutorial and appellate duties of the solicitors-general); 45-15-3 (3), (5), 45-15-10 (describing the prosecutorial and appellate duties of the Attorney General). The statute does not apply to appeals by state entities and actors who have no control over prosecutions, like the DOC here. Admittedly, there is more occasion for some involvement by the DOC

in criminal cases arising out of crimes committed in prisons, because the DOC remains responsible for the prison and the defendant after a crime is committed, because prison staff and inmates will often be witnesses, and because the DOC is required to fund the court costs in such cases under OCGA § 42-5-3. However, the prosecutions of such criminal cases are ultimately controlled by the prosecuting attorneys, and we therefore conclude that only the appeals *they* file are subject to the appeal limitations in OCGA § 5-7-1 et seq.

(b) Rowe further argues that this Court lacks jurisdiction because the order at issue is not a final judgment and therefore is appealable only through the interlocutory appeal process set forth in OCGA § 5-6-34 (b). The DOC argues that the trial court's order is effectively a permanent injunction, which would be immediately appealable under OCGA § 5-6-34 (a) (4); in the alternative, the DOC argues that the order is immediately appealable under the collateral order doctrine. The collateral order doctrine applies where an order (1) resolves an issue that is "substantially separate" from the matter to be tried, (2) would result in the loss of an important right if review

had to wait for a final judgment in the overall case, and (3) completely and conclusively decides the issue such that nothing in the underlying action can affect it. *Britt v. State*, 282 Ga. 746, 748 (1) (653 SE2d 713) (2007) (citation and punctuation omitted).[7] Here, (1) the sealing order is substantially separate from the criminal prosecution, (2) the DOC faces the loss of important rights because it either must violate its own regulation or face contempt, and (3) the sealing order completely and conclusively decides the issue. We conclude, accordingly, that this appeal by the DOC is indeed subject to the collateral order doctrine, whether or not it is considered an appeal of a permanent injunction. See *WXIA-TV v. State of Ga.*, 303 Ga. 428, 432 (1) n.5 (811 SE2d 378) (2018) (explaining that a modified gag order was appealable, "either because it [was] appealable as a final judgment under the collateral order doctrine . . . or because it functionally amount[ed] to an injunction");

---

[7] We note that the collateral order doctrine does not apply to appeals brought under OCGA § 5-7-1 et seq., which does not give the State authority to appeal from all final judgments in appeals of criminal cases brought by the prosecuting attorney. See *Cash*, 298 Ga. at 92-93 (1).

*State v. Murray*, 286 Ga. 258, 259 (1) (687 SE2d 790) (2009) (holding that this Court had jurisdiction over a collateral order for contempt against the prosecutor in a murder case); *Fulton County v. State*, 282 Ga. 570, 570-571 (1) (651 SE2d 679) (2007) (addressing a collateral order directing Fulton County to pay part of the defense expenses); *In re Paul*, 270 Ga. 680, 682-683 (513 SE2d 219) (1999) (addressing a collateral order to compel a non-party to disclose information in a murder case).

3. We next turn to the question of whether the trial court had the authority to address the matter contained in the order on appeal. This question is easily resolved because we have previously held that orders directing prison or jail authorities to allow visits by defense team members under appropriately specified conditions are proper. This authority arises out of the statutory provision granting the trial courts the authority "[t]o control, in the furtherance of justice, the conduct of [their] officers and all other persons connected with a judicial proceeding before [them], in every matter appertaining thereto[.]" OCGA § 15-1-3 (4). See *Zant v. Brantley*, 261

Ga. 817, 818 (1) (411 SE2d 869) (1992) ("By virtue of his custody of the defendant/movant, the warden was a person 'connected with' the pending motion for new trial and was thus subject under OCGA § 15-1-3 (4) to the trial court's control of his conduct in the furtherance of justice. Thus, the trial court did not need personal jurisdiction of the warden, a non-party, to issue the order from which this appeal stems.").

In addition, such authority arises out of the court's obligation to protect the constitutional rights of the defendant; therefore, that authority exists even if in contradiction to other non-constitutional sources of law and even if the prison or jail officers addressed in such a visitation order are not joined as a party. See *Pope v. State*, 256 Ga. 195, 212 (22) (345 SE2d 831) (1986) (holding that the statute that classifies the records of the Board of Pardons and Paroles must yield to a capital defendant's constitutional right to mitigating evidence), disapproved on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a) n. 3 (820 SE2d 640) (2018), and overruled on other grounds by *Nash v. State*, 271 Ga. 281, 281 (519 SE2d 893) (1999);

*James v. Hight*, 251 Ga. 563, 563-564 (307 SE2d 660) (1983) (holding that "[t]o the extent that there exists a conflict between the statutory authority vested in the DOR [now the DOC] to transfer prisoners from one correctional institute to another, and the authority vested in the superior court to enforce the Constitution, the former must yield to the latter" and holding that "it was not necessary that the Commissioner be joined as a party"). See also *Putnal v. State*, 303 Ga. 569, 582 (6) n.10 (814 SE2d 307) (2018) ("We remind the trial court that, as a superior court, it has the power to draft ex parte orders directing the official in charge of a place of incarceration housing a defendant in a case pending before it to permit evaluations of the defendant by defense-retained experts in a manner that not only protects the identity of the experts for whom access is granted but also prohibits the official in charge and his staff, including jail personnel, from discussing or disclosing this information or any other information contained in the orders to anyone other than the trial court or the defense."). Thus, we conclude that the trial court had the authority to direct the DOC, as

a non-party, to take appropriate steps to ensure the rights of Rowe with respect to protecting his defense strategy from disclosure to the prosecution.

4. While we conclude that the trial court had the *authority* to address the matter at issue here, we also conclude that the *scope* of the trial court's order is nonetheless subject to review for an abuse of discretion. See *Atlanta Newspapers v. Grimes*, 216 Ga. 74, 79 (1-5) (114 SE2d 421) (1960). Here, the trial court's order was in contravention of a duly enacted regulation regarding the management of inmate records. Specifically, the regulation requires that inmate records be maintained in each inmate's personal prison file. See Ga. Comp. R. & Regs., r. 125-2-4-.05 (b). If contravening this regulation were actually necessary to secure Rowe's constitutional rights, we would fully affirm the trial court's decision here. However, we conclude that the portion of the trial court's order directing the removal of the relevant records from inmates' files and sealing them in the legal office of the DOC was an abuse of discretion, at least on the current record. Specifically, ordering the removal of the records

from their usual place to the legal office was unnecessary, when the key issue was controlling the persons who were entitled to examine them. Instead, the trial court should have, as this Court has approved previously, see *Putnal*, 303 Ga. at 582 (6) n.10, ordered the prison officials not to disclose any of the relevant visitation records to the prosecuting attorney or the prosecution team or to any person whose access to the records is not reasonably justified. In ordering a divergence from the otherwise-binding regulation, see Ga. Comp. R. & Regs. r. 125-2-4-.05 (b), without sufficient need, the trial court abused its discretion in exercising its authority. Accordingly, we affirm the trial court's order in part and reverse it in part, and we direct the trial court to issue a new order that allows the inmate records to be maintained in compliance with the relevant regulation but also directs prison officials to maintain the confidentiality of Rowe's defense strategy with respect to the prosecution team.

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur, except Warren, J.,*

*who concurs in judgment only in Division (2) (a), and McMillian, J.,*

*who concurs in judgment only in Division 4.*

DECIDED MAY 18, 2020.
Murder. Putnam Superior Court. Before Judge Trammell.

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tina M. Piper, Rebecca J. Dobras, Assistant Attorneys General*, for appellant.

*Adam S. Levin; Erin L. Wallace; Hogue Hogue Fitzgerald & Griffin, Franklin J. Hogue*, for appellee.

*Gabrielle A. Pittman*, amicus curiae.