**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 1, 2025**

# In the Court of Appeals of Georgia

A25A1262. UNIFIED GOVERNMENT OF CUSSETA-CHATTAHOOCHEE COUNTY v. HOYTE.

A25A1365. HAYMOND v. HOYTE, ET AL.

HODGES, Judge.

These appeals, which are consolidated for our review, stem from disputes about the placement of Damon Hoyte's mobile home on a lot that is within the district of the Unified Government of Cusseta-Chattahoochee County (the "Unified Government"). In Case No. A25A1262, we granted the Unified Government's discretionary application from the Superior Court's December 13, 2024 order which, inter alia, reversed a magistrate court's denial of multiple motions filed by Hoyte and remanded the case for retrial in the magistrate court. In Case No. A25A1365, Melissa Haymond, whose family owns a traditional, site-built home in the same neighborhood

as Hoyte's mobile home, appealed from a superior court order denying her motion to strike and to dismiss Hoyte's complaint against her pursuant to Georgia's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, OCGA § 9-11-11.1. For the reasons that follow, we reverse in Case No. A25A1262 and vacate and remand in Case No. A25A1365.

Hoyte and Haymond own property in the same community. Hoyte purchased his property at 110 Stagecoach Drive in 2017. Haymond's husband purchased their property at 109 Mustang Drive in 2022. Stagecoach Drive is the community's main entrance and exit road. The community has a mix of traditional site-built homes and single- and double-wide mobile homes.

Shortly after purchasing the Mustang Drive property, Haymond noticed that a "very old single[-]wide trailer was newly placed on what was previously an empty lot located at 110 Stagecoach Drive." Haymond believed that an ordinance required a minimum of five acres of land for the placement of a mobile or manufactured home. Because she thought that the 110 Stagecoach lot was less than five acres, she attended a meeting of the local planning and zoning commission. At the meeting, she was referred to the Chatthoochee County Board of Commissioners (the "Board"). When

she attended a Board meeting, she saw that Hoyte was present and learned that he is a Board member. She avers that Hoyte said his mobile home was grandfathered in; Hoyte avers in judicio in his complaint that he applied for a variance. According to Haymond's sworn affidavit, however, the Board was unable to locate Hoyte's paperwork seeking a variance.[1]

In July 2022, Haymond and others prepared a flyer titled "Protect Our Neighborhood and Our Property," urging residents who did not want an "older single[-]wide trailer" on the lot on "Stagecoach Road" to get the issue on the agenda for future Board and planning and zoning commission meetings. Haymond prepared a petition for neighborhood residents to sign if they opposed Hoyte's mobile home. That petition, dated October 1, 2022 (the "First Petition"), provided that:

> The Single Wide Manufactured Home that is placed on Mustang Dr. was placed there by achieving a permit by Zoning and Planning under exceptions that were not authentic. This is a 1 acre lot that has been empty for over 10 years and meets all the criteria for a Stick built

---

[1] The trial court's order finds that: "In 2022, amidst ongoing conflict with others in the county government, and after approval by the Planning and Zoning Board, [Hoyte] placed a manufactured home on the property at 110 Stagecoach Drive." The parties do not cite to, nor did we find, documentation of the application for, or the grant of, this variance within the appellate record.

home.[2] Single Wide Manufactured homes in our neighborhood decrease the value of our property which consists predominantly of stick built homes.

The First Petition, however, referred to a mobile home on *Mustang Drive*; Hoyte's mobile home was located on *Stagecoach Drive*. As Haymond later acknowledged in her November 2024 affidavit, this petition contained an "error and inadvertently named the street as Mustang Drive." She averred, however, that when she and others canvassed the neighborhood on foot seeking signatures for the petition, she told people that Hoyte had asked for a variance so that the "twenty . . . plus year old single wide trailer could remain at 110 Stagecoach Drive." Hoyte applied for a conditional use permit in October 2022, the same month the First Petition was circulated.

In early November 2022, Cusseta-Chattahoochee County Code Enforcement issued Hoyte a warning indicating that he was in violation of a zoning ordinance.[3] Later that month, Hoyte received a "Notice of Ordinance Violation," citing him for

---

[2] A stick-built home is a wood-framed house built largely on-site, according to https://www.bankrate.com/real-estate/stick-built-home/, accessed July 31, 2025.

[3] The "Violation Ticket" in the record is partly illegible.

"impermissible use on property zoned R-3" under Section 9 of the Chattahoochee County Zoning Ordinance.[4]

The Magistrate Court of Chattahoochee County scheduled a hearing on December 8, 2022. Hoyte pled guilty to the code violation. In February 2023, the court held a hearing where it found Hoyte in contempt.[5] On February 10, 2023, it issued a disposition nunc pro tunc to the December hearing date, finding Hoyte guilty, fining him $500, and ordering him to remove the mobile home. It issued a second order, also filed February 10, 2023, but not nunc pro tunc, directing Hoyte to pay a $200 fine, giving him 10 days to remove the mobile home, and providing for additional fines if he did not comply.

---

[4] It does not appear that the zoning ordinance is part of the appellate record. See *Thorsen v. Saber*, 288 Ga. 18, 19 (1) ( 701 SE2d 133) (2010) ("It is well established . . . that judicial notice can not be taken by the superior court or this [C]ourt of city or county ordinances, but they must be alleged and proved.") (citation and punctuation omitted); *Holman v. Glen Abbey Homeowners Assn.*, 356 Ga. App. 379, 385 (2) (847 SE2d 1) (2020) ("The proper method of proving a city [or county] ordinance is production of the original ordinance or a certified copy thereof.") (citation and punctuation omitted).

[5] No transcripts of either the December 2022 or the February 2023 hearings were included in the record on appeal.

Hoyte subsequently filed numerous motions, all of which the magistrate court denied. Hoyte challenged those denials in the superior court, which reversed the magistrate court's rulings, as will be discussed more fully below.

Hoyte did not remove the trailer, and the record shows that by July 2023, he had paid approximately $21,000 in fines.[6] Around this time, according to Haymond's affidavit, Hoyte obtained a conditional use permit to temporarily move the mobile home to a lot on a different street, which he did. He then sought a public hearing on his conditional use permit seeking to move the mobile home back to Stagecoach Drive. In preparation for that hearing, scheduled for May 2024, Haymond and others prepared another petition that they circulated around the neighborhood seeking opposition to the placement of Hoyte's trailer on Stagecoach Drive. This April 14, 2024 petition (the "Second Petition") contained the correct property address.

A few months after the May 2024 hearing, Hoyte, his wife, and their company filed a wide-ranging, more than 300-paragraph complaint against Haymond, the Board, the Unified Government, and others, including a magistrate court judge, seeking $5 million in damages.

---

[6] The superior court in Case No. A25A1262 ordered the Unified Government to refund that money to Hoyte.

The Unified Government appeals from the superior court's order reversing an omnibus magistrate court order. Specifically, the Unified Government argues that the trial court applied an incorrect standard of review, erred in reversing the magistrate court's denial of multiple untimely motions Hoyte filed, and erred in remanding the case to the magistrate court for retrial. For the reasons that follow, we agree and reverse the superior court's decision.

1. As an initial matter, it is incumbent upon our Court to inquire into its own jurisdiction. See *State v. Rowe*, 308 Ga. 806, 808-809 (2) (a) (843 SE2d 537) (2020). Our concern arises from OCGA § 5-7-1 et seq., which limits the subject matters that may be appealed by "the State of Georgia" in "criminal cases[.]" See OCGA § 5-7-1 (a); *Rowe*, 308 Ga. at 809 (2) (a) ("Appeals by the State in criminal cases are construed strictly against the State and 'the State may not appeal *any* issue in a criminal case, whether by direct or discretionary appeal, unless that issue is listed in OCGA § 5-7-1.'") (citation and punctuation omitted; emphasis in original).

The instant situation, however, is not implicated by OCGA § 5-7-1. Hoyte was convicted of violating an ordinance, which is a quasi-criminal matter. See *Adams v.*

*Madison County Planning & Zoning*, 271 Ga. App. 333, 334 (2) (609 SE2d 681) (2005).[7]

Our Supreme Court has concluded that:

> OCGA § 5-7-1 et seq. applies to appeals brought on behalf of the State by the prosecuting attorney responsible for the criminal case — usually the district attorney or solicitor and sometimes the Attorney General. . . . The statute does not apply to appeals by state entities and actors who have no control over prosecutions, like the [Unified Government] here.

*Rowe*, 308 Ga. at 809 (2) (a) (discussing prosecutorial duties of attorneys general, district attorneys, and solicitors and finding this Court had jurisdiction to consider an appeal brought by the Department of Corrections related to a double murder prosecution because "only the appeals [filed by prosecuting attorneys] are subject to the appeal limitations in OCGA § 5-7-1 et seq."). We have jurisdiction.

2. The Unified Government appeals from the superior court's order reversing the magistrate court's denial of multiple motions Hoyte filed challenging his conviction and seeking, inter alia, a retrial and to recuse the magistrate court judge. These motions relate to the magistrate court's final disposition orders, one of which

---

[7] *Adams*, 271 Ga. App. at 334 (2) ("A conviction in magistrate court for violating a county ordinance is quasi-criminal in nature, and where a party convicted of an ordinance violation files a petition for certiorari in the superior court seeking review of the conviction, the proceeding in superior court is criminal and not civil.").

was issued nunc pro tunc to December 8, 2022, and the other which was filed February 10, 2023. Hoyte filed all of these largely similar motions from those final dispositions on March 30, 2023, 48 days after the latest disposition.[8] The magistrate court, in an order dated September 8, 2023, found that these motions were untimely filed.[9] Hoyte timely petitioned the superior court for review of that order; however, pretermitting the Unified Government's contention that the superior court employed the wrong standard of review, we find that, as a matter of law, Hoyte's motions were untimely.[10] As a result, the superior court erred and its order must be reversed.

---

[8] In construing a motion, this Court looks to the substance of the motion, rather than to its nomenclature. See *Thompson v. State*, 274 Ga. 818 (559 SE2d 730) (2002).

[9] The magistrate court denied all of Hoyte's motions. Although it should, instead, have dismissed any motion seeking out-of-time relief, see *Rutledge v. State*, 313 Ga. 460, 461 (870 SE2d 720) (2022), this does not change our analysis.

[10] We note that Hoyte's appellee's brief provides no citations to the record. Although such are not required by our rules if the appellee "is satisfied with their presentation by the appellant[,]" if the appellee disagrees with the appellant's presentation, he "*must identify* any points of disagreements with supporting citations to the record." (Emphasis supplied.) Court of Appeals Rule 25 (b). It is well settled that this Court "will not cull the record on behalf of any party." *Files v. Housing Auth. of City of Douglas*, 368 Ga. App. 455, 462 (1), n. 4 (890 SE2d 356) (2023).

(a) *Motion to file out-of-time motions.* As Hoyte clearly recognized by filing this motion, and as will be outlined below, all of the March 30, 2023 motions were untimely.

In reversing the magistrate court's order, the superior court essentially granted Hoyte a right of out-of-time appeal. It lacked authority to do so. In *Cook v. State*, 313 Ga. 471 (870 SE2d 758) (2022), our Supreme Court established that "there was and is no legal authority for motions for out-of-time appeal in trial courts and that the out-of-time appeal procedure allowed in [prior cases] is not a legally cognizable vehicle for a convicted defendant to seek relief for alleged constitutional violations." Id. at 506 (5); accord *Rutledge v. State*, 313 Ga. 460, 461 (870 SE2d 720) (2022). Therefore, the superior court erred in granting Hoyte's motion to file out-of-time motions.

(b) *Motion to withdraw guilty plea.* As noted above, the magistrate court's final dispositions finding Hoyte guilty were filed, respectively, nunc pro tunc to December 8, 2022 and February 10, 2023. Hoyte did not move to withdraw his guilty plea until March 30, 2023, more than 30 days later and after the term of court had expired.

"It is well settled that when the term of court has expired in which a defendant was sentenced pursuant to a guilty plea, the trial court lacks jurisdiction to allow the

10

withdrawal of the plea." (Citation and punctuation omitted.) *Kerch v. State*, 301 Ga. 814 (804 SE2d 417) (2017); accord *Thompson v. State*, 274 Ga. 818 (559 SE2d 730) (2002). Uniform Magistrate Court Rule 10 provides that "[w]here statutes or case law of general application in this state require action within a term of court, in the magistrate court this shall signify within thirty (30) days[.]" Hoyte's motion to withdraw his guilty plea was filed 48 days after the latest final disposition, and was therefore untimely. Uniform Magistrate Court Rule 30.12 (a) provides that a motion to withdraw a guilty plea is allowed only "upon a *timely* motion for withdrawal, [if the defendant] proves that withdrawal is necessary to correct a manifest injustice." (Emphasis supplied.) Because Hoytes' motion was untimely, the superior court erred in reversing the magistrate court's denial of this motion.

(c) *Motion to re-open matter*. To the extent that this motion can be construed as a motion for new trial, see *Thompson*, 274 Ga. at 818 (assessing substance of motion rather than its nomenclature), the motion was filed more than 30 days after the entry of the final dispositions. OCGA §§ 5-5-40 (a); 5-5-41 (a), (b) (providing that when a motion for new trial is made after the 30-day period following entry of judgment, the

11

defendant must show good reason why the motion was not timely made, and that no such motion may be made or received unless it is an extraordinary motion); Uniform Magistrate Court Rule 28.1 (providing that all motions must be filed at or before the time set by law unless extended by the judge in writing prior to trial).

Even if this motion can be construed as an extraordinary motion for new trial, as noted above, Hoyte's appellate brief contains no record citations to evidence or affidavits in support of an extraordinary motion showing that he had "good reason" or otherwise met the requirements for an extraordinary motion. OCGA § 5-5-41 (a); see *Weaver v. State*, 359 Ga. App. 784, 786 (2) (860 SE2d 96) (2021) ("Good reason exists only where the moving party exercised due diligence but, due to circumstances beyond his control, was unable previously to discover the basis for the claim he now asserts.") (citation and punctuation omitted). Further, although Hoyte argues that the trial court failed to informed him of certain rights, as previously noted, the transcripts of the hearings where these deficiencies allegedly occurred are not included in the appellate record. See *Grimes v. State*, 362 Ga. App. 242, 244 (1) (867 SE2d 843) (2022) ("[W]here an omitted transcript is necessary for this Court to review the alleged error, we are required to presume that the lower court ruled correctly . . . .")

(citation and punctuation omitted). The superior court erred in reversing the magistrate court's denial of this motion.

(d) *Motion to vacate final dispositions*. To the extent that Hoyte intended to appeal his conviction through this motion to vacate the dispositions finding him guilty, his motion was untimely. See *Thompson*, 274 Ga. at 818. According to OCGA § 5-3-7 (b), Hoyte was required to file a petition for review with the clerk of the superior court within 30 days of the magistrate court's filing of its final judgments. Additionally, to the extent that Hoyte meant to argue that his conviction was void in this quasi-criminal case, such is not an appropriate remedy. *Munye v. State*, 342 Ga. App. 680, 683 (1) (a) (803 SE2d 775) (2017) (finding that a motion seeking to vacate a judgment of conviction as void "is not an appropriate remedy in a criminal case[,]" and that a defendant must instead file a *timely* motion for new trial, a direct appeal, a motion to withdraw his guilty plea, an extraordinary motion for new trial, a motion in arrest of judgment, or a petition for the writ of habeas corpus). The superior court erred in reversing the magistrate court, because Hoyte's motion to vacate was untimely and was not an appropriate method of vacating a criminal conviction.

13

(e) *Motion to recuse*. Hoyte moved to recuse the magistrate court judge who issued the order, arguing that the magistrate had previously advised him about the placement of the mobile home at 110 Stagecoach Drive, thereby creating a conflict of interest. Uniform Magistrate Court Rule 4.2.1, however, provides that:

> All motions to recuse or disqualify a judge presiding in a particular case or proceeding shall be timely filed in writing and all evidence thereon shall be presented by accompanying affidavit(s) which shall fully assert the facts upon which the motion is founded. Filing and presentation to the judge *shall be not later than five (5) days after the affiant first learned of the alleged grounds for disqualification, and not later than ten (10) days prior to the hearing or trial which is the subject of recusal or disqualification*, unless good cause be shown for failure to meet such time requirements. In no event shall the motion be allowed to delay the trial or proceeding.

(Emphasis supplied.) No affidavit accompanied the motion to recuse, and the motion contains nothing indicating that it was presented to the judge within five days of Hoyte's first learning of the grounds for disqualification he alleges. Further, Hoyte filed the motion 112 days after, rather than the required 10 days prior to, the December 8, 2022 hearing. The superior court erred in reversing the magistrate court's denial of this motion.

14

(f) *Motion for new hearings and oral arguments and motion for oral arguments.* Because of our decisions in Division (1) (a)-(e), Hoyte is not entitled to new hearings or oral arguments, and the superior court erred in reversing the magistrate court's order in this regard.

In sum, the superior court erred in reversing the magistrate court's order regarding Hoyte's motions as outlined above, in reversing Hoyte's conviction, and in remanding the case to the magistrate court for retrial.

*Case No. A25A1365*

Pertinent to this appeal, Hoyte's complaint alleged claims including conspiracy and fraud against Haymond.[11] Haymond moved to strike and to dismiss Hoyte's complaint pursuant to Georgia's anti-SLAPP law. The Superior Court denied that motion. On appeal, Haymond argues that the trial court erred (i) in basing its opinion upon inadmissible evidence, and (ii) in denying her motion to strike and dismiss by finding that her speech and activity were not protected under the anti-SLAPP statute

---

[11] The superior court's order states that Hoyte also raised a defamation claim against Haymond. Hoyte's complaint, however, specifically alleges defamation only against a single defendant, Sheila Wilson, who allegedly sent a letter to the Board stating that Hoyte's wife had assaulted her.

and by concluding that Hoyte showed a probability of prevailing on his claims, as required by the anti-SLAPP statute.

3. Haymond first contends that the trial court erred in "relying upon an inadmissible written statement" by Joseph Addison, one of the signatories of the First Petition. This contention of error lacks merit.

In Addison's statement, which the trial court mentioned in its order, Addison averred that he signed a petition against placing a mobile home on Mustang Drive — the erroneous address listed in Haymond's First Petition — but once he learned that the address at issue was actually Stagecoach Drive, he changed his mind and signed a petition supporting the placement of a mobile home at that address. The trial court explicitly referenced Addison's statement in support of its finding that members of the community could have been purposely misled about the location of the mobile home.

Haymond contends that the trial court erred in considering Addison's "Sworn Statement," which was signed and notarized. She argues that it was inadmissible because it lacks a jurat showing Addison swore or affirmed its truthfulness and because it was served on the eve of trial. She cites, inter alia, OCGA § 9-10-113 (discussing the sufficiency of affidavit verifications).

Pretermitting the admissibility of a written statement for the reasons Haymond argues, it appears that Addison's written statement — as Haymond recognizes — never was admitted into evidence. Rather, at the trial court's request, Hoyte's attorney read the statement into the record verbatim during the hearing on the motion to dismiss. At the completion of the reading, the trial court asked Haymond's attorney if she had any response. She objected, but only on the basis that Hoyte's attorney "think[s] he's the only attorney that fights for people's rights, because I . . . as well as other attorneys I know, do just the same." Haymond's attorney raised no objections in the trial court based upon the errors she now claims on appeal: the lack of a jurat or timing. Nor did she object to the statement being read into evidence.

> Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on below.

(Citation and punctuation omitted.) *Smith v. Northside Hosp.*, 347 Ga. App. 700, 703, n. 22 (820 SE2d 758) (2018); see generally *Lewis v. Fidelity Nat. Title Ins. Co.*, 367 Ga. App. 644, 648 (3) (887 SE2d 337) (2023) (finding that asserted error was not

17

preserved for review where appellant failed to object to consideration of an affidavit in the trial court); *In re Estate of Boyd*, 340 Ga. App. 744, 745, n. 5 (798 SE2d 330) (2017) (physical precedent only) (declining to consider objection related to verification of notarized document raised for the first time on appeal). This contention of error was not preserved for our review.

4. Haymond next argues that the trial court erred in denying her anti-SLAPP motion to strike and dismiss Hoyte's complaint. For the reasons that follow, we vacate the trial court's order and remand the case for further proceedings consistent with this opinion.

A "'SLAPP,' or 'Strategic Lawsuit Against Public Participation,' is a meritless lawsuit brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up its target's resources and driving up the costs of litigation." (Citation and punctuation omitted.) *Weaver v. Millsaps*, 370 Ga. App. 513 (898 SE2d 239) (2024). Georgia's anti-SLAPP statute, OCGA § 9-11-11.1, "allows a defendant to move to strike or dismiss such a frivolous action as an avenue for ending the suit quickly, summarily, and at minimal expense." (Citation and punctuation omitted.) Id. We construe the

statute broadly in furtherance of the General Assembly's declared purpose "to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." OCGA § 9-11-11.1 (a); *Barnwell v. Trivedi*, 366 Ga. App. 168, 170 (881 SE2d 16) (2022).

We review "a trial court's ruling on an anti-SLAPP motion to strike de novo, viewing the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff as the non-moving party." (Citation and punctuation omitted.) *Giraldi v. Bowen*, 374 Ga. App. 347, 348 (912 SE2d 724) (2025); see also *Wilkes & McHugh v. LTC Consulting*, 306 Ga. 252, 263 (2) (b) (830 SE2d 119) (2019).[12]

OCGA § 9-11-11.1 (b) (1) provides:

> A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the

---

[12] Hoyte does not cite to, nor does it appear, that he filed any affidavits that are in the record.

nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

We have recognized a two-step analysis within the statute:

First, the trial court decides whether the moving party has made a threshold showing that the challenged claim is one arising from protected activity. The moving party meets this burden by demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories spelled out in OCGA § 9-11-11.1 (c) (1) - (4). These categories include any written or oral statement (1) made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law; (3) made in a place open to the public or a public forum in connection with an issue of public interest or concern; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern. If the moving party makes a threshold showing of protected activity, then the court proceeds to the second step of the analysis and determines whether the plaintiff has established a reasonable probability that he will prevail on the merits of his claim.

(Citations and punctuation omitted.) *Giraldi*, 374 Ga. App. at 350-351 (1). "Only a claim that satisfies both prongs of the anti-SLAPP statute — i.e., that arises from

20

protected activity and lacks even minimal merit — is a SLAPP that is subject to being stricken." (Citation, punctuation, and emphasis omitted.) *Wilkes & McHugh*, 306 Ga. at 262-263 (2) (b). With these principles in mind, we turn to Haymond's claims.

Haymond argues that the trial court erred in its consideration of the first step of the anti-SLAPP analysis by finding that she failed to show that the challenged claim arose from protected activity. We agree.

Here, the trial court determined that Haymond failed to make a threshold showing regarding the First Petition because she did not show that the challenged claim arose from protected activity under three subparts of the statute: OCGA § 9-11-11.1 (c) (2)-(4), as outlined above in *Giraldi*, 374 Ga. App. at 350-351 (1).[13]

Specifically, as to all three parts of the statute at issue in this appeal, the trial court found that because the First Petition referred only to the placement of a mobile

---

[13] Haymond did not raise OCGA § 9-11-11.1 (c) (1) in the trial court. Further, although Haymond presents other arguments on appeal related, inter alia, to her oral statements in public forums and to communications with her neighbors, the trial court's order addressed and ruled only upon the First Petition, and our opinion is thus limited to that ruling. See *Lane Dermatology v. Smith*, 360 Ga. App. 370, 376-377 (1) (e) (861 SE2d 196) (2021) (reiterating that the Court of Appeals is "a court for the correction of errors of law . . . . There having been no rulings by the trial court on the issue[s] raised on appeal, there are no rulings to review for legal error.") (citation and punctuation omitted).

home on *Mustang Drive*, when the mobile home was actually located on *Stagecoach Drive*, Haymond failed to meet her burden. No Georgia opinion has addressed an identical factual situation. Our Supreme Court has held, however, that in deciding issues under the anti-SLAPP statute, "we may look to California case law . . . for guidance[.]" *Wilkes & McHugh*, 306 Ga. at 258 (2).

Turning to California case law, in *M.F. Farming Co. v. Couch Distrib. Co.*, 207 Cal. App. 4th 180 (2012), disapproved in part on other grounds by *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (II) (C), n. 11 (2016), the California Court of Appeals considered a similar issue: whether the defendant's conduct in submitting allegedly false site maps to a city as part of the development of the defendant's property was a protected activity. *M. F. Farming Co.*, 207 Cal. App. 4th at 194-195 (III) (B) (2). The California court determined that, because the site maps were submitted "in connection with [the city's] permitting process, an official proceeding, . . . the 'arising from' prong is satisfied[.]" Id. The "arising from" language came from the part of California's anti-SLAPP law, Cal. Code Civ. Proc. § 425.16 (b) (1), that is similarly worded to Georgia's OCGA § 9-11-11.1 (b) (1). The *M. F. Farming Co.* court rendered this decision in the context of Cal. Code Civ. Proc. § 425.16 (e) (2), which contains wording nearly

22

identical to OCGA § 9-11-11.1 (c) (2), the part of the Georgia statute which addresses "[a]ny written or oral statement or writing or petition made *in connection with an issue under consideration or review* by a legislative, executive, or judicial body, or any other official proceeding authorized by law[.]" (Emphasis supplied.) As the California court determined, "[c]ase after case makes clear that the validity of the speech or petitioning activity is ordinarily not a consideration in analyzing" the first step of the anti-SLAPP analysis which addresses claims for relief "arising from" acts which could reasonably be construed as a right of petition or free speech. *M. F. Farming Co.*, 207 Cal. App. 4th at 195-196 (III) (B) (2) (collecting cases).

Here, although Haymond's petition indeed contained the wrong address, the petition itself — regardless of its accuracy — was an act that could reasonably be construed as "arising from" protected speech, and was before the Board "in connection with" its consideration of the *issue* of whether Hoyte's mobile home was permitted under zoning ordinances Haymond argued are applicable to the neighborhood as a whole. See OCGA § 9-11-11.1 (b) (1), (c) (2). More specifically, because Hoyte's "cause of action arose directly out of . . . [the petition] submitted to the [Board, Haymond] satisfied the first prong of the anti-SLAPP statute." *M.F.*

*Farming Co.*, 207 Cal.App. 4th at 195 (III) (B) (2). We thus find that Haymond has "made a threshold showing that the challenged claim is one arising from protected activity." *Giraldi*, 375 Ga. App. at 350 (1); compare *Dellinger-Allen v. O'Brien*, 355 Ga. App. 811, 818-819 (2) (a), (b) (846 SE2d 124) (2020) (reversing grant of anti-SLAPP motion to strike where movant failed to show any connection between her grievances before a public body and the paragraphs of a contract she claimed was breached).

For this reason, Haymond's inclusion of the wrong property address in her petition "should be considered in the second part of the [anti-SLAPP] analysis; whether there is a probability plaintiffs will prevail." *DuPont Merck Pharmaceutical Co. v. Superior Court*, 78 Cal. App. 4th 562, 566 (2000). In this second step, the plaintiffs must "demonstrate that their claims are both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if their evidence is credited." *Wilkes & McHugh*, 306 Ga. at 264 (4). Here, the trial court's order contains "no discussion or analysis of whether the plaintiffs had stated and substantiated a legally sufficient claim[.]" (Citation and punctuation omitted.) Id. We

therefore vacate the order and remand the case to the trial court for reconsideration of the second step of the anti-SLAPP analysis.

*Judgment reversed in Case No. A25A1262 and judgment vacated and case remanded in Case No. A25A1365. McFadden, P. J., and Pipkin, J., concur.*