**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 6, 2015**

# In the Court of Appeals of Georgia

A15A0578. TOLSON et al. v. SISTRUNK et al.

BARNES, Presiding Judge.

This case involves a dispute between counsel over the validity of an attorney's lien filed pursuant to OCGA § 15-19-14 (b) and the apportionment of fees under the lien. Following an evidentiary hearing, the trial court apportioned 30 percent of the attorney's fees to Cochran, Cherry, Givens, Smith & Sistrunk, P.C. (the "Cochran Firm"), concluding that it was entitled to 25 percent of the fees for originating the case and 5 percent of the fees for the pre-suit legal work it performed. Audrey Tolson and the Tolson Firm, P.C. (collectively, "Tolson") appeal the trial court's fee award, arguing that the attorney's lien filed by the Cochran Firm was invalid and that the firm should not have been awarded a percentage of the fees for originating the case. Tolson also argues that there was insufficient evidence to support the trial court's award of 5 percent of the fees to the Cochran Firm for its pre-trial legal work.

For the reasons discussed below, we conclude that the attorney's lien filed by the Cochran Firm was valid and that there was evidence to support the trial court's award of 5 percent of the fees to the firm for its pre-trial legal work. However, we also conclude that the trial court erred in awarding the Cochran Firm 25 percent of the fees for originating the case, and we therefore reverse that portion of the trial court's fee award and remand with the direction that those fees instead be distributed to Tolson.

The validity and enforceability of an attorney's lien, and the amount of fees to award the attorney enforcing the lien, are matters for the trial court to decide. See *Woods v. Jones*, 305 Ga. App. 349, 353 (3) (699 SE2d 567) (2010). Where the trial court is the factfinder, we construe the evidence in the light most favorable to support the court's judgment and will uphold the court's factual findings on appeal if there is any evidence to support them. See *McRae, Stegall, Peek, Harman, Smith & Manning, LLP v. Ga. Farm Bureau Mut. Ins. Co.*, 316 Ga. App. 526 (729 SE2d 649) (2012) (hereinafter "*McRae*"); *Cannon v. Wesley Plantation Apartments*, 256 Ga. App. 244, 246-247 (2) (568 SE2d 137) (2002). However, "[t]he plain legal error standard of review applies where the appellate court determines that the issue was of

law, not fact." (Citation and punctuation omitted.) *McRae*, 316 Ga. App. at 526. Mindful of these principles, we turn to the record in the present case.

Construed in favor of the trial court's judgment, the record reflects that Sistrunk, Lamberti, and Williams partnered with the national law firm founded by Johnny Cochran and currently operate the Atlanta branch of the Cochran Firm. In October 2009, when his wife died after undergoing gastric bypass surgery, Quincy Bryant contacted the Cochran Firm to discuss the possibility of a medical malpractice claim. Bryant knew of the national reputation of Johnny Cochran and was encouraged by his mother-in-law to contact the Atlanta branch of the firm Cochran had founded. Following an initial consultation with Tolson, who was an associate at the Cochran Firm, Bryant hired the firm to investigate and pursue a potential medical malpractice claim against his wife's doctors. Bryant signed a contingency fee agreement in October 2009, agreeing that the Cochran Firm would receive 45 percent of any recovery as its fee and would be reimbursed for its expenses incurred in investigating and preparing the case. The agreement did not specify how the Cochran Firm would be paid if the firm was discharged before any recovery was obtained.

Over the next approximately 19 months, the Cochran Firm investigated and developed Bryant's case. The Cochran Firm procured the relevant medical records,

3

researched medical issues relating to the care and treatment of Bryant's wife, consulted with three potential experts, developed a theory of the case, and drafted a complaint. The Cochran Firm spent $8,805.50 on its pre-suit legal work. Tolson was assigned to the Bryant matter and performed "the workup of the case" under the direction and supervision of partner Lamberti, and Tolson served as Bryant's primary contact at the firm.

Tolson resigned from the Cochran Firm by email on May 9, 2011. The previous day, Tolson had contacted a number of the firm's clients with whom she had closely worked, including Bryant, and advised them that she was leaving the Cochran Firm and that they would need to choose whether to allow her to represent them going forward or to have the Cochran Firm continue to represent them. Tolson could not recall whether she told Bryant and the other clients on that date that, if they chose to discharge the Cochran Firm, they might be liable for the fees and expenses that the firm had already incurred. During his conversation with Tolson, Bryant decided that he wanted her to continue to represent him rather than the Cochran Firm. In her May 9th resignation email, Tolson informed the Cochran Firm of her contact with the clients and of the decision by several of them to be represented by her.

4

Associates at the Cochran Firm were compensated for their work by receiving a percentage of any recovery obtained once the case was resolved. Tolson did not receive any pay from the Cochran Firm for her work on the Bryant matter before or after her resignation.

After Tolson's resignation, Bryant contacted the Cochran Firm, terminating the firm's representation and requesting that his case file be transferred to Tolson. He also entered into a contingency fee agreement with Tolson and her firm under which they would receive a fee representing 40 percent of any future recovery.

In July 2011, Tolson associated the personal injury firm of Cash, Krugler & Fredericks, LLC (the "Fredericks Firm") to assist her in the Bryant matter, and in October 2011, Tolson and the Fredericks Firm filed suit on behalf of Bryant, as surviving spouse and administrator of his wife's estate, against several defendants for medical malpractice in the State Court of DeKalb County. The Fredericks Firm assumed the role of lead counsel, with Alwyn Fredericks performing the "vast majority of the work" on the case, including the drafting of the pleadings and discovery and conducting multiple depositions. In prosecuting the case, Tolson incurred $3,002.02 in expenses, while the Fredericks Firm incurred $83,298.30. Because the Fredericks Firm was performing a majority of the work and incurring

5

most of the expenses, Tolson ultimately agreed to split the contingency fee with the Fredericks Firm on a 60/40 basis, with the Fredericks Firm receiving 60 percent of the fee and Tolson receiving 40 percent.

In November 2012, the Cochran Firm filed its notice of attorney's lien in the Bryant case for payment of the $8,805.50 in expenses it had incurred and for a reasonable portion of the attorney's fees under quantum meruit if there was a recovery for Bryant. In addition to filing its attorney's lien notice in the Bryant case, the Cochran Firm filed a separate action against Tolson in May 2013 in the Superior Court of Fulton County, alleging that Tolson had improperly procured clients, including Bryant, while she was still an associate at the firm (the "Fulton County action"). The Cochran Firm asserted multiple claims against Tolson in the Fulton County action, including breach of the duty of loyalty, tortious interference with contract, and unjust enrichment, and the firm sought compensatory and punitive damages from her. The current status of the Fulton County action is unclear from the record.[1]

---

[1] The trial court in the present case ruled that because the notice of attorney's lien was filed before the Fulton County action was filed, the present case was filed first for purposes of OCGA §§ 9-2-5 (a) and 9-2-44 and was not subject to abatement. Tolson does not challenge that ruling on appeal.

6

In May 2014, several defendants settled the case with Bryant for $2,000,000, and $800,000 of the proceeds were disbursed as attorney fees to Tolson and the Fredericks Firm. After learning of the settlement, the Cochran Firm filed a motion in April 2014 in the Bryant case to enforce its lien and obtain a portion of the $800,000 in attorney fees.

Before the trial court ruled on the Cochran Firm's motion to enforce the lien, Tolson and the Fredericks Firm dismissed the case with prejudice, leading the Cochran Firm to move to vacate the dismissal in June 2014. In August 2014, the trial court conducted a hearing on the Cochran Firm's motions to vacate the dismissal and to enforce the lien. The trial court ruled that the lien was valid, that the dismissal would be vacated, and that a separate evidentiary hearing would be conducted to determine the amount of attorney's fees and expenses that should be apportioned to the Cochran Firm. At the trial court's direction, the disputed attorney fees were held in the Fredericks Firm's client trust account pending resolution of the matter.

Later that month, the trial court conducted an evidentiary hearing to determine how much of the fees should be awarded to the Cochran Firm pursuant to its attorney's lien. The parties agreed that any fees awarded to the Cochran Firm would be paid out of the fees that would have been distributed to Tolson under her

7

contingency fee agreement with Bryant rather than out of the fees paid to the Fredericks Firm.

After the evidentiary hearing, the trial court apportioned the attorney's fees as follows: $480,000 (60 percent) to the Fredericks Firm; $240,000 (30 percent) to the Cochran Firm; and $80,000 (10 percent) to Tolson. In apportioning 30 percent of the attorney's fees to the Cochran Firm, the trial court concluded that under the doctrine of quantum meruit, the firm should receive 25 percent of the fees ($200,000) for originating the case. The trial court further concluded that the Cochran Firm should receive an additional 5 percent of the fees ($40,000) for the pre-suit legal work it had performed for Bryant. Additionally, the trial court awarded the Cochran Firm the $8,805.50 in expenses it had incurred as part of its pre-suit work.[2]

1. In her first enumeration of error, Tolson contends that the trial court erred in concluding that the attorney's lien filed by the Cochran Firm was valid. According to Tolson, the Cochran Firm was not entitled to file an attorney's lien because the firm performed only pre-suit legal work and was discharged by Bryant before the lawsuit was filed. We are unpersuaded.

---

[2] Tolson had conceded that the Cochran Firm was entitled to the $8,805.30 in expenses it had incurred.

8

OCGA § 15-19-14, which addresses the different types of attorney's liens enforceable under Georgia law, provides in part:

(b) Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their liens as their clients had or may have for the amount due thereon to them.

(c) Upon all actions for the recovery of real or personal property and upon all judgments or decrees for the recovery of the same, attorneys at law shall have a lien for their fees on the property recovered superior to all liens except liens for taxes, which may be enforced by mortgage and foreclosure by the attorneys at law or their lawful representatives as liens on personal property and real estate are enforced. The property recovered shall remain subject to the liens unless transferred to bona fide purchasers without notice.

(d) If an attorney at law files his assertion claiming a lien on property recovered in an action instituted by him, within 30 days after a recovery of the same, his lien shall bind all persons.

"An attorney's lien on a claim for money, i.e., a charging lien, is the equitable right of the attorney to recover his fees and costs due him for his services, and may

9

be satisfied out of the judgment obtained by his professional services." (Citation and punctuation omitted.) *McRae*, 316 Ga. App. at 528. An attorney's lien, like the one at issue here that was placed on a tort action for monetary damages, is a lien on a claim for money and thus constitutes a charging lien. See id. In Georgia, charging liens are controlled by OCGA § 15-19-14 (b). *McRae*, 316 Ga. App. at 528.

Contrary to Tolson's argument, OCGA § 15-19-14 (b) affords protection to former counsel who performed legal work for a client in anticipation of filing a lawsuit, even if successor counsel ultimately filed the suit. By its plain language, OCGA § 15-19-14 (b) applies without limitation to "attorneys at law" and entitles them to liens upon "actions, judgments and decrees for money." It is true that the lien does not attach until a lawsuit has been filed on the client's behalf. See *Howe & Assoc. v. Daniels*, 280 Ga. 803, 804 (631 SE2d 356) (2006); *Steele v. Cincinnati Ins. Co.*, 171 Ga. App. 499, 500-501 (3) (320 SE2d 203) (1984). But nothing in the statutory language restricts its application to a limited class of attorneys who worked on the lawsuit when it was filed. Rather, OCGA § 15-19-14 (b) applies non-restrictively to "attorneys at law" and thus is broad enough to encompass those attorneys who conducted legal work for a client in anticipation of a lawsuit that ultimately is filed on behalf of the client by a different attorney. Any other result

10

would be inconsistent with the principle that liens exist to ensure that an attorney is compensated for the "fruits of [his] labor and skill . . . whether realized by judgment or decree, or by virtue of an award, or in any other way, so long as they are the result of his exertions." (Citations and punctuation omitted.) *Recoba v. State*, 167 Ga. App. 447, 449 (306 SE2d 713) (1983), overruled in part on other grounds as stated in *In the Interest of E. N. R.*, 323 Ga. App. 815, 817, n.6 (748 SE2d 293) (2013).

Tolson, however, emphasizes that we have repeatedly stated that OCGA § 15-19-14 "is in derogation of the common law, and is to be strictly construed." (Citation and punctuation omitted.) *Steele*, 171 Ga. App. at 501 (3). Yet, the rule of strict construction does not mean that a statute should be interpreted so narrowly as to defeat the legislative intent as evidenced by the plain language of the statute. See *Amoena Corp. v. Strickland*, 248 Ga. 496, 500 (3) (283 SE2d 894) (1981). The non-restrictive language of OCGA § 15-19-14 (b) does not differentiate between classes of "attorneys at law" who have worked on a matter for a client who can file and enforce a lien on an action for money, and we decline to engraft such a limitation upon the statute. See *First Nat. Bank of Ames, Iowa v. Innovative Clinical & Consulting Svcs.*, 280 Ga. App. 337 (634 SE2d 88) (2006) (courts "may not constrict

11

[a] subsection . . . of the statute by engrafting upon it limitations the legislature has not enacted").

Tolson also relies upon a different subsection of the attorney's lien statute, OCGA § 15-19-14 (d), in an effort to support her argument that attorneys who perform pre-suit legal work for a client cannot obtain a lien on an action for money that ultimately was filed by another attorney. Tolson's reliance on OCGA § 15-19-14 (d) is misplaced because subsection (d) only applies to liens "on property recovered," and "property" in this context does not mean "money" recovered in an action for damages, as made clear when subsection (d) is read in conjunction with subsections (b) and (c) of the statute.

A fundamental rule of statutory construction is that the interpretation "of language and words used in one part of the statute must be in the light of the legislative intent as found in the statute as a whole." (Citation and punctuation omitted.) *Bennett Elec. Co. v. Spears*, 188 Ga. App. 502, 503 (373 SE2d 286) (1988). "Particular words of statutes are not interpreted in isolation; instead, courts must construe a statute to give sensible and intelligent effect to all of its provisions[.]" (Citation and punctuation omitted.) *U.S. Bank Nat. Assn v. Gordon*, 289 Ga. 12, 14 (4) (709 SE2d 258) (2011). When words in a statute are repeated in "subsequent parts

12

of the same statute," we presume that the legislature intended for the words "to be understood in the same sense." (Citation and punctuation omitted.) *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 702 (10 SE2d 375) (1940). Conversely, "[i]t is generally presumed that [the legislature] acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." (Citation and punctuation omitted.) *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (114 SCt. 1757, 128 LE2d 556) (1994).

When these rules of statutory construction are applied in the present case, it is clear that the word "property" in subsection (d) of OCGA § 15-19-14 means "real or personal property" as referenced in subsection (c) of the statute rather than "money" as referenced in subsection (b). See *Hodnett v. Bonner*, 107 Ga. 452, 455 (33 SE 416) (1899) (noting that the lien provided for in Civil Code 1895, § 2814 (3) and (4), a predecessor statute to OCGA § 15-19-14 (c) and (d), "does not arise unless there has been a judgment . . . in which property, *either real or personal*, is recovered") (emphasis supplied). Indeed, a federal court addressing the same question has thoroughly and persuasively explained the interrelation between subsections (b), (c), and (d) of OCGA § 15-19-14:

13

In this case, the legislature, in subsection (c), dealt with liens arising in actions for "recovery of real or personal property," and talked about the nature of the attorney's lien attaching to the "property recovered" arising from such actions. In contrast, subsection (b) deals with liens arising in actions "for money," and discusses the slightly different nature of those liens. Subsection (d), which is at issue here, like subsection (c), speaks only of "property recovered." It makes no mention of money. Reading the language of subsection (d) in context – as it must – the Court concludes that it applies only to attorney's liens arising under subsection (c) of the statute: those arising in actions for the recovery of real or personal property. It does not apply to liens arising under subsection (b), which concerns only "actions, judgments, and decrees for money." If the legislature had intended subsection (d) to apply to subsection (b) in addition to subsection (c), it could have easily omitted the phrase "on property recovered."

In addition, subsection (d) qualifies the lien defined in subsection (c), but not that in subsection (b). Subsection (c)'s last sentence states that "[t]he property recovered shall remain subject to the liens unless transferred to bona fide purchasers without notice." Subsection (d), however, qualifies this provision by saying that, if the attorney files his lien on property recovered, the "lien shall bind all persons." Subsection (b) contains no analogous provision to which subsection (d)'s qualifier logically could be said to attach.

. . . Applying settled rules of statutory construction, the Court holds that subsection (d) of OCGA 15-19-14 . . . applies only to liens

14

arising under subsection (c) of that statute. It does not concern liens
arising in actions for money [under subsection (b)].

*In re Diamond Mfg. Co.*, 123 B. R. 125, 128-129 (S.D. Ga. 1990), aff'd without

opinion by *Moore v. Diamond Mfg. Co.*, 959 F.2d 972 (11th Cir. Ga. 1992).[3] See also

*In re Chewning & Frey Security*, 328 B. R. 899, 922 (Bankr. N.D. Ga. 2005). For the

same reasons articulated by the federal court in *In re Diamond Mfg. Co.*, we conclude

that OCGA § 15-19-14 (d) has no bearing on the instant case involving a lien arising

out of an action for money under OCGA § 15-19-14 (b).[4]

In sum, we conclude that under OCGA § 15-19-14 (b), predecessor counsel

who performed legal work for a client in developing a lawsuit is authorized to place

a lien on the suit when it is filed for the client by successor counsel. The trial court

therefore committed no error in concluding that the Cochran Firm was authorized to

---

[3] "Decisions of federal courts are not binding authority on this court, but their reasoning may be persuasive[.]" *Baskin v. Georgia Dept. of Corrections*, 272 Ga. App. 355, 359 (3) (612 SE2d 565) (2005).

[4] To the extent that *Ramsey v. Sumner*, 211 Ga. App. 202, 204 (3) (438 SE2d 676) (1993), suggests that OCGA § 15-19-14 (d) applies to a monetary settlement in a suit for damages, that language is non-binding dicta. See *North Druid Dev. v. Post, Buckley, Schuh & Jernigan*, 330 Ga. App. 432, 437 (1), n.6 (767 SE2d 29) (2014) (noting that "statements in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are nonbinding dicta") (citation and punctuation omitted).

15

file an attorney's lien on the medical malpractice action commenced by Tolson and the Fredericks Firm.

2. In her second enumeration of error, Tolson contends that even if the attorney's lien was valid, the trial court erred in determining the amount of fees that should be awarded to the Cochran Firm. Tolson maintains that the trial court improperly awarded 25 percent of the fees to the Cochran Firm for originating the case because origination conferred no value upon Bryant, and she further argues that there was insufficient evidence for the trial court to award the Cochran Firm 5 percent of the fees for its pre-suit legal work.[5]

(a) We agree with Tolson that the trial court erred in awarding the Cochran Firm 25 percent of the fees for its origination of the case. Origination or procurement of a case is not a service rendered on behalf of the client and does not confer any value or benefit upon him or her, and, therefore, should not be considered by a trial

---

[5] Tolson also argues that the trial court erred by awarding fees to Cochran, Cherry, Givens, Smith & Sistrunk, P.C. because no such entity exists and that, as a result, the court should have made the award "to the individual attorneys on the case." We do not agree. There was evidence that a general partnership consisting of partners Sistrunk, Lamberti, and Williams comprised the law firm that represented Bryant before the lawsuit was filed and that they do business in Atlanta as Cochran, Cherry, Givens, Smith & Sistrunk, P.C.

16

court in determining the amount of fees that ought to be awarded to an attorney under quantum meruit in a lien enforcement action.

As an initial matter, it bears repeating that the Cochran Firm sought its recovery of fees in the context of the filing and enforcement of an attorney's lien. An attorney's lien under OCGA § 15-19-14 (b) is based on "the fruits of the labor and skill of the attorney" exerted on behalf of the client, and the lien only attaches to an action for money upon a showing that "legal work" was performed by the attorney for the client. *Recoba*, 167 Ga. App. at 449-450. Hence, the determination of fees under OCGA § 15-19-14 (b) is predicated on the labor and services rendered *to the client* involved in the action for money rather than labor and services rendered to other counsel or a third party.

That the focus should be on the services rendered to the client is further borne out by our case law discussing the application of quantum meruit in the context of attorney's fees. As we have explained, if an attorney is discharged before earning his contractual contingency fee, he may obtain a recovery under quantum meruit. *Haldi v. Watson*, 240 Ga. App. 801, 802 (2) (522 SE2d 696) (1999). And our precedent makes clear that when the discharged attorney seeks recovery from a former client under quantum meruit, the fees awarded to the attorney should be determined based

17

on the reasonable value of the services rendered to the client. *Amstead v. McFarland*, 287 Ga. App. 135, 138 (1) (650 SE2d 737) (2007). It follows that if the discharged attorney's services at issue had no value to the client, "the client has no obligation to pay for them" under quantum meruit. *Haldi*, 240 Ga. App. at 803 (2).

Furthermore, even where, as here, the discharged attorney is entitled to seek recovery of his fees from former co-counsel under a theory of quantum meruit,[6] the measurement of fees still must be tied to the services that were rendered by the discharged attorney to and for the benefit of the client. This is made clear by our decision in *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*, 277 Ga. App. 512 (627 SE2d 112) (2006), which, like the present case, involved an attorney's lien dispute between discharged and current counsel over fees that were being held in an

---

[6] The general rule is that an attorney who enters into a contingency fee agreement with a client, and who is discharged before the contingency occurs, must seek recovery under quantum meruit from the client rather than new counsel subsequently retained by the client. See *King v. Lessinger*, 276 Ga. App. 145, 147 (622 SE2d 381) (2005). But if the former and current counsel worked as co-counsel for the mutual benefit of the client before the former counsel was discharged, then the former counsel may recover his fees in quantum meruit from the current counsel. See *Eichholz Law Firm, P.C. v. Tate Law Group*, 310 Ga. App. 848, 852-853 (1) (714 SE2d 413) (2011); *Kirschner & Venker, P.C.*, 277 Ga. App. at 514, n.1. Here, before the Cochran Firm was discharged, both the Cochran Firm and Tolson (as an associate at the firm) worked on the legal matter for the mutual benefit of Bryant, and thus the Cochran Firm was entitled to recover its fees in quantum meruit from the fees that otherwise would have been distributed to Tolson. See id.

18

escrow account after the settlement of the underlying tort action. In that context, we held that the amount of fees awarded under the lien to discharged counsel should be "based on the reasonable value of the services that it had rendered *to the client* before being fired." (Emphasis supplied.) Id. at 513.

In *Eichholz Law Firm*, 310 Ga. App. at 853 (1), another case where we held that discharged attorney could seek recovery of fees from former co-counsel under quantum meruit, we used different language than *Kirschner & Venker* in articulating how to measure fees under quantum meruit, but to the same ultimate effect. Citing to *Kirschner & Venker*, we held that discharged counsel could recover fees in quantum meruit for the "services it provided to [its former co-counsel] *pursuant to* their joint venture" representing the client. (Emphasis supplied.) Id. Under this formulation, the discharged counsel can only recover under quantum meruit for those services undertaken as part of a mutual effort with co-counsel to benefit the client whom they were representing, and thus the measurement of fees still must be predicated on services that were rendered to or for the benefit of the client.

Applying this precedent, we conclude that the trial court erred in awarding 25 percent of the fees to the Cochran Firm for its origination of the case. Origination or procurement of a case – in other words, rainmaking – is not a service by an attorney

that confers value upon a client or that is rendered to or for the benefit of the client. Consequently, the fact that a discharged attorney originated the case is not a relevant factor in calculating the fees owed to the attorney in quantum meruit in a lien enforcement action. We therefore reverse the portion of the trial court's order awarding the Cochran Firm 25 percent of the fees for originating the case and remand with the direction that the court instead distribute those fees to Tolson.

As previously noted, the Cochran Firm filed a Fulton County action against Tolson in which it sought monetary damages for Tolson's alleged breach of the duty of loyalty and unjust enrichment by procuring clients, including Bryant, before her resignation as an associate at the firm. Hence, to the extent the Cochran Firm is seeking recompense for Tolson's alleged unjust enrichment in procuring clients whose cases were originated by the Cochran Firm, it may have a potential avenue for pursuing such a claim through the Fulton County action. What the Cochran Firm cannot do, however, is recover for its origination of the case under a theory of quantum meruit in a lien enforcement action.

(b) In contrast, we disagree with Tolson's assertion that there was insufficient evidence for the trial court to award the Cochran Firm 5 percent of the fees in quantum meruit for its pre-suit legal work performed for Bryant. A trial court's

20

determination of the reasonable value of an attorney's services to the client will be affirmed on appeal if there is any evidence to support it. See *Mullis v. Sikes*, 244 Ga. App. 368, 369 (2) (535 SE2d 533) (2000). "Questions of value are peculiarly for the determination of the jury where there is any data in evidence upon which they may legitimately exercise their own knowledge and ideas," *Babb v. Potts*, 183 Ga. App. 785, 787 (1) (360 SE2d 44) (1987) (citation and punctuation omitted), and "[t]he same rule of course applies to bench trials based on quantum meruit for attorney fees." *Griner v. Foskey*, 158 Ga. App. 769, 771 (2) (282 SE2d 150) (1981).

Here, while the Cochran Firm did not keep hourly time records because its fee was contingent on recovery, there was evidence that after being retained by Bryant to investigate and pursue a medical malpractice case relating to his wife's death, the Cochran Firm procured the relevant medical records, researched medical issues relating to the care and treatment of Bryant's wife, consulted with three potential experts, developed a theory of the case, and drafted a complaint. And because Tolson performed much of the pre-suit work on behalf of the Cochran Firm when she was an associate there, the trial court was entitled to reasonably infer that she used the knowledge obtained from her pre-suit investigation when she litigated the case with the Fredericks Firm to a successful settlement, and thus that the Cochran Firm's work

had lasting value to the client and contributed to the ultimate result that was accomplished. Additionally, the trial court had before it the original contingency fee agreement between the Cochran Firm and Bryant, which reflected that if the firm had prosecuted the case to its completion, it would have received 45 percent of any recovery. Under these combined circumstances, the trial court was authorized to find that the Cochran Firm's professional services rendered to Bryant were reasonably valued at 5 percent ($40,000) of the total fees award. See generally *Babb*, 183 Ga. App. at 787 (1); *Griner*, 158 Ga. App. at 771 (2). We therefore affirm the portion of the trial court's order awarding the Cochran Firm 5 percent of the fees for its pre-suit legal work.

*Judgment affirmed in part; reversed in part; and case remanded with direction. Ray and McMillian, JJ., concur.*