312 Ga. 523
FINAL COPY

S21A1131. SCHMITZ v. BARRON et al.

BETHEL, Justice.

In this case, Warren Schmitz contests the results of the November 3, 2020 election to fill the seat for Georgia House of Representatives District 52. House District 52 is situated entirely within Fulton County. The certified election results showed that 17,069 votes were cast for Shea Roberts, and 16,692 votes were cast for incumbent Deborah Silcox, thus making Roberts the winner by 377 votes.

Claiming a variety of irregularities, Schmitz filed a timely petition in Fulton County Superior Court on November 25, 2020, to contest the results of the House District 52 election. On April 22, 2021, that petition was dismissed by the superior court based on its determination that Roberts had to be served with the notice of the election contest under OCGA § 21-2-524 (f) and its finding that

Schmitz failed to exercise diligence to see that Roberts was properly served.

On appeal, Schmitz contends that these determinations were erroneous and that the trial court lacked the authority to dismiss the case on this basis. However, we agree with the superior court that OCGA § 21-2-524 (f) requires candidates to be served with notice of the election contest. Moreover, because the findings of the superior court with respect to diligence are supported by the record and because dismissal of the election contest was within the superior court's discretion, we affirm.

1. "Georgia law . . . allows elections to be contested through litigation, both as a check on the integrity of the election process and as a means of ensuring the fundamental right of citizens to vote and to have their votes counted accurately." *Martin v. Fulton County Bd. of Registration and Elections*, 307 Ga. 193, 194 (835 SE2d 245) (2019); see also OCGA § 21-2-520 et seq. "But an election contest is, by statutory design, an expedited proceeding — and one that vests in trial courts broad authority to manage the proceeding, including

to 'proceed without delay to the hearing and determination of' the election contest." *Martin*, 307 Ga. at 194 (quoting OCGA § 21-2-525 (b)). "The [General Assembly] has demonstrated that election contests are to be heard with the greatest of expedition by requiring the petition be filed within five days of the consolidation of returns." *Swain v. Thompson*, 281 Ga. 30, 31 (2) (635 SE2d 779) (2006); see also OCGA § 21-2-524 (a).

> This short time period reflects the [General Assembly's] strong desire to avoid election uncertainty and the confusion and prejudice which can come in its wake. Certainly, the swift resolution of election contests is vital for the smooth operation of government.

(Citation and punctuation omitted.) *Swain*, 281 Ga. at 31 (2). As we noted in *Martin*, "[t]his system balances citizens' franchise against the need to finalize election results, which, in turn, facilitates the orderly and peaceful transition of power that is a hallmark of our government." 307 Ga. at 194.

In light of the clear public interest in the prompt handling of election contests, delays in their resolution are disfavored. Moreover, we have long held that it is the responsibility of the

person bringing an election contest to ensure that the proceedings move in an expeditious fashion, including by ensuring that all defendants and other interested individuals are given proper notice of the election contest. See *Swain*, 281 Ga. at 32 (2). In light of these principles, we set forth the history of this election contest below.

2. In reviewing the trial court's order dismissing Schmitz's petition, we review only the evidence of diligence presented to the trial court before it made its ruling; additional evidence presented to the trial court after the ruling at issue is not considered on appeal. See *State v. White*, 282 Ga. 859, 860-861 (1) (655 SE2d 575) (2008) (appellate court cannot consider material attached as exhibits to a motion for reconsideration that was not ruled upon by the trial court before the filing of a notice of appeal); see also *Givens v. Ichauway, Inc.*, 268 Ga. 710, 712 (1) (493 SE2d 148) (1997) ("[A]ppellate courts will review only evidence presented to the trial court before its ruling on the motion." (citation and punctuation omitted)). The record before the superior court when it ruled on Roberts's motion to dismiss showed the following. On November 25, 2020, Schmitz

timely filed a verified petition in Fulton County Superior Court to contest the results of that election, naming as defendants Richard Barron (in his official capacity as the Director of Registration and Elections for Fulton County) and the Fulton County Board of Registration and Elections. The petition also identified Roberts and Silcox as the candidates in the House District 52 election, as required by OCGA § 21-2-524 (a) (4), but did not name them as defendants.[1] Among other things, Schmitz's petition alleged that

---

[1] OCGA § 21-2-524 (a) provides, in relevant part, as follows:

A petition to contest the result of [an] election shall be filed in the office of the clerk of the superior court having jurisdiction within five days after the official consolidation of the returns of that particular office . . . and certification thereof by the election official having responsibility for taking such action under this chapter . . . and shall allege:

(1) The contestant's qualification to institute the contest;

(2) The contestant's desire to contest the result of such primary or election and the name of the nomination, office, or question involved in the contest;

(3) The name of the defendant;

(4) The name of each person who was a candidate at such primary or election for such nomination or office in the case of a contest involving same;

(5) Each ground of contest;

(6) The date of the official declaration of the result in dispute;

(7) The relief sought; and

there were more than 377 illegal and improper votes cast in the election for House District 52.

The Fulton County Superior Court Clerk issued the "special process" required by OCGA § 21-2-524 (f) on February 18, 2021.[2] The special process directed Barron and the Board to answer Schmitz's petition by March 8. Barron and the Board jointly answered the petition on March 19. The superior court entered a notice on March

---

(8) Such other facts as are necessary to provide a full, particular, and explicit statement of the cause of contest.

[2] OCGA § 21-2-524 (f) provides as follows:

Upon such petition being filed, the clerk of the superior court shall issue notice, in the form of special process directed to the sheriff of such county, requiring the defendant and any other person named in such petition as a candidate for such nomination or office, if any, to appear and answer such petition, on a day to be fixed in such notice, not more than ten days nor less than five days after the service of such notice. Such notice, with a copy of the petition attached, shall be served by the sheriff upon the defendant and any other person named therein in the same manner as petitions and process are served in other civil cases. On or before the day fixed in such notice, unless for good cause shown the presiding judge shall extend the time therefor, the defendant shall appear and answer such petition and may set up by way of answer or cross action any right of interest he or she may have or claim in such proceeding. Any other person who was a candidate at such primary or election for the nomination or office involved and upon whom notice was served as provided in this subsection shall be deemed a litigant to such proceeding and may set up by way of answer or cross action any right of interest or claim he or she may have.

6

23, setting a virtual hearing for the case on March 29. Roberts and Silcox were never served with the special process.

On March 26, Roberts filed a motion to intervene, a motion to strike Schmitz's affidavit, a motion to dismiss, and answers and defenses to the petition. In addition to arguments regarding the substance of Schmitz's allegations, Roberts stated that she was never properly served in the case, as required by OCGA § 21-2-524 (f). On March 27, the superior court granted Roberts's motion to intervene and directed that her other motions be docketed. The court's order also stated that "Roberts must be served with the petition."

The court held a virtual hearing on March 29. Silcox was present for that hearing and, the same day, signed an acknowledgment of service that was prepared and notarized by Schmitz's attorney. The court noted that it did not "see that there's been any attempt to have [Roberts] served in this case." Schmitz's counsel responded that he had "repeatedly" asked the Fulton County Superior Court to perfect service and that there had been "multiple

7

e-mails" requesting that service be perfected. The court replied that "from what I've seen in the record as far as the service . . . I have seen nothing that's in the . . . record about any efforts." The court stated that it "[planned] to see that those two necessary parties were served in the . . . case" and that it wished to examine the efforts that were made to serve the candidates.

At the conclusion of the hearing, the court indicated that it would set an additional hearing to allow the parties to respond to each other's filings and to address issues discussed in the March 29 hearing. The court then issued an order giving the parties and candidates ten days to submit additional or amended filings with responses to any such filings due ten days later.

On April 8, Schmitz filed an amended petition and a response to Roberts's motion to dismiss. In that response, Schmitz stated that he was "coordinating service" upon Roberts and claimed that he "was not required" to name Roberts as a defendant or effectuate service on her. Schmitz further argued that although he had successfully obtained the special process required by OCGA § 21-2-

524 (f) from the clerk, "service of process via the Sheriff's Office was a matter outside [Schmitz's] control." Schmitz then recounted his efforts to have Barron and the Board served with the special process and argued that his efforts to serve Barron and the Board had been diligent. Schmitz reiterated that any delays in service were "caused by matters outside of [his] control."

On April 15, Schmitz filed a motion to "recast" the petition such that, in addition to the original parties, Silcox would be named as a plaintiff and Roberts would be named as a defendant. On April 19, Roberts filed amended answers and defenses and renewed her motion to dismiss the amended petition.

The superior court issued an order on April 22 dismissing the petition. Citing OCGA § 21-2-524 (f) and this Court's decision in *Swain*, the superior court found that Schmitz had provided no evidence of any efforts to effectuate service on Silcox and Roberts, noting that there was no evidence that Schmitz had provided the clerk with addresses for the candidates at which they could be served. The superior court further found that Schmitz's "lack of

9

diligence" in seeing that service be perfected (including "[a]llowing the case to stagnate for almost two months" before the Clerk prepared the special process) was inexcusable given that *Swain* requires that election cases "be heard with the greatest of expedition." In light of those findings, the superior court ruled, "as an act of discretion which the court takes with great seriousness" that Roberts's motion to dismiss should be granted and that the election contest should be dismissed in its entirety.

On April 28, Schmitz filed a motion for reconsideration, which the superior court did not rule upon before Schmitz filed a notice of appeal directed to this Court just two days later, on April 30. He amended the notice of appeal on May 14.[3]

---

[3] In his motion for reconsideration, Schmitz included a lengthy set of exhibits and detailed for the first time his efforts to have the clerk issue the special process required by OCGA § 21-2-524 (f) and to have the special process served on Roberts by the Fulton County Sheriff. The motion and its exhibits reflect the following. On December 1, 2020, Schmitz sent a letter to the Fulton County Sheriff's Office requesting that Barron and the Board be served with the petition and summons. Schmitz provided the sheriff's office addresses for both Barron and the Board. The sheriff served Barron on December 21, 2020. On February 9, 2021, Schmitz's attorney sent a letter to the Fulton County Superior Court Clerk indicating that the clerk had not set a date for the defendants or Roberts to respond and had not issued special process to be

3. Although election contests are governed by various portions of Georgia's Civil Practice Act, see, e.g., *Martin*, 307 Ga. at 210 (2), the Election Code sets forth a number of procedural requirements that are unique to election contests. Among those is the requirement set forth in OCGA § 21-2-524 (f) requiring the clerk of the court in which the contest is filed to issue "special process" that is to then be served by the sheriff on the defendants to the contest as well as each candidate in the election being challenged. Although this statute specifies duties only for the clerk and sheriff, we have held that even

served on Roberts. Schmitz requested that the clerk take these actions "as soon as possible." The clerk acknowledged receipt of the letter on February 17, 2021 and indicated that the letter was being forwarded to the assigned judge's law clerk. Schmitz replied and told the clerk that he believed that the clerk, not the judge or her law clerk, was required by statute to issue the special process. That evening, the assigned judge's law clerk sent a message directing Schmitz's letter to the Fulton County Superior Court Clerk and requesting that the clerk issue the special process. Following the March 29 hearing, counsel for Schmitz and Roberts corresponded about the possibility of Roberts acknowledging service of the special summons. Those discussions proved fruitless, and Schmitz's counsel contacted the Sheriff's office to request expedited service of the special process on Roberts. The sheriff's office indicated that expedited service would not be provided. Although all of this information paints a disconcerting picture of the diligence court, clerk's office, and sheriff's office personnel exercised in performing their legal obligations under the statute and would have been relevant to the superior court's findings regarding diligence, because it was not presented to the superior court before it entered the order from which Schmitz appeals, we do not consider such information in this appeal. See *White*, 282 Ga. at 860-861 (1).

11

where the clerk fails to act as OCGA § 21-2-524 (f) requires, "judicial recognition of the clerk's duty in election cases to issue process in the proper form does not end the inquiry." *Swain*, 281 Ga. at 31 (2). Instead, in recognition of the legal requirements reflecting the General Assembly's policy of expediting election contests, we have held that "recognition of the clerk's duty to issue proper process must be balanced against the traditional placement on plaintiffs of the duty to ensure proper and timely service." Id. Specifically, "once the plaintiff becomes aware of a problem with service," he must exercise "the greatest possible diligence to ensure proper and timely service." (Citation and punctuation omitted.) Id. at 32 (2).

As we held in *Swain*, receipt of an answer and motion to dismiss from an opposing party asserting insufficiency of service "should [inspire the plaintiff] to exercise the greatest possible diligence to ensure proper and timely service." Id. at 32 (2). And where the plaintiff, in light of such notice, does not exercise diligence in seeing that the party complaining of lack of service is served by the time of a hearing on a motion to dismiss, it is within the superior

12

court's discretion to dismiss the election contest. See id. This Court reviews such a decision only for an abuse of the superior court's discretion, and the superior court's findings in an election contest will not be disturbed unless clearly erroneous. See id.

Here, the record, as it existed at the time of dismissal, supports the superior court's determination that, despite repeated indications that Roberts had never been served with the special process required by OCGA § 21-2-524 (f), Schmitz did not exercise diligence in ensuring that, once issued by the clerk, the special process was served on Roberts by the sheriff. Although Schmitz's counsel represented at the March 29 hearing that there had been "multiple" communications with the clerk about issuing the special process, Schmitz presented no evidence of those efforts or efforts to contact the sheriff's office to the superior court before it dismissed Schmitz's petition.[4]

---

[4] Although Schmitz has largely addressed his arguments to supposed delays on the part of clerk and sheriff in this case, we note that it took over two months for a judge to be assigned to this case once it was transferred from the Fifth Judicial Administrative District to the Fourth Judicial Administrative

We also reject Schmitz's efforts to distinguish this case from *Swain*. In particular, we disagree with his contention that *Swain* does not apply because Roberts was not named as a defendant in the petition contesting the election in this case. As Schmitz rightly points out, in *Swain*, the party who was not served was listed as a

---

District pursuant to OCGA § 21-2-523. We caution superior courts that, like parties, the clerk, and the sheriff, they too have a duty under the Election Code to see that election contests are managed efficiently and expeditiously. See *Martin*, 307 Ga. at 194 ("[A]n election contest is, by statutory design, an expedited proceeding — and one that vests in trial courts broad authority to manage the proceeding, including to 'proceed without delay to the hearing and determination of' the election contest." (quoting OCGA § 21-2-525 (b)).

We further recognize that the process of serving parties and candidates under OCGA § 21-2-524 (f) differs markedly from the normal process of serving parties to a civil case. As Schmitz suggests, a situation could arise in which a petitioner is left at the mercy of an uncooperative court clerk or sheriff who refuses to carry out the duties prescribed by OCGA § 21-2-524 (f). Demonstrating diligence in effectuating service despite such obstacles is one remedy available to the petitioner, and there may be others. However, the question of how best, if at all, to give the petitioner in an election contest the ability to effectuate service on defendants and candidates without the involvement of the clerk or sheriff is a question of policy left to the General Assembly. As we have noted,

> striking the right balance between competing legitimate policy interests is a political question, and this Court is concerned only with legal questions. As members of this State's judicial branch, it is our duty to interpret the laws as they are written. We leave political questions to the political branches, and the policy arguments in this case are properly directed to the General Assembly.

(Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 174 (1) (b) n.11 (751 SE2d 337) (2013).

14

defendant in the petition contesting the election at issue in that case. However, the text of OCGA § 21-2-524 (f) makes no distinction between parties and non-party candidates with regard to service of the special process. The statute's text provides that the special process "shall be served by the sheriff upon the defendant and any other person named therein[.]" OCGA § 21-2-524 (f). Thus, this contention fails.

Moreover, as in *Swain*, the record before the superior court supports the court's finding that Roberts was never served and that Schmitz did not exercise diligence in seeing that she was served despite receiving notice of defects in service at least as early as the date of Roberts's intervention in the case and the filing of an answer and a motion to dismiss raising the issue of insufficiency of service. See id. at 32 (2) (noting that "[c]ertainly," the defendant's motion to dismiss "triggered the duty of greatest possible diligence" to see that the defendant was properly served). As *Swain* clearly indicates, the failure to diligently pursue service as required by OCGA § 21-2-524 (f) provides grounds for dismissal of an election contest regardless of

15

the participation of an individual who raises issues about the sufficiency of service of process. Here, because the superior court's findings in relation to diligence were not clearly erroneous, its decision to dismiss the election contest for lack of service under OCGA § 21-2-524 (f) did not constitute an abuse of discretion. See *Swain*, 281 Ga. at 32 (2).

*Judgment affirmed. All the Justices concur.*

Decided September 21, 2021.

Election contest. Fulton Superior Court. Before Judge Harvey, pro hac vice.

*Smith & Liss, Ray S. Smith III*, for appellant.

*Nancy L. Rowan, David R. Lowman, Cheryl M. Ringer, Kaye W. Burwell; Krevolin & Horst, Adam M. Sparks, Joshua I. McLaurin*, for appellees.

16