**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 7, 2022**

# In the Court of Appeals of Georgia

A22A0429. SMITH et al. v. MILLSAP et al.

MARKLE, Judge.

Attorney John Da Grosa Smith represented Ryan Millsap in a business dispute between Millsap and his former partner, James Schulz. While that case was still pending, Smith became concerned that he would not be fully compensated for his work, and he filed an attorney's lien under OCGA § 15-19-14 (b). Millsap moved to have the lien canceled, and the trial court granted the motion. In this appeal, Smith challenges the trial court's order, asserting that this Court has jurisdiction over his appeal under the collateral order doctrine despite the lack of a final order in the underlying lawsuit. For the reasons that follow, we disagree, and therefore, we dismiss this appeal for lack of jurisdiction.

[T]he validity and enforceability of an attorney's lien, and the amount of fees to award the attorney enforcing the lien, are matters for the trial court to decide. Where the trial court is the factfinder, we construe the evidence in the light most favorable to support the court's judgment and will uphold the court's factual findings on appeal if there is any evidence to support them. With respect to questions of law, however, we employ a de novo standard of review.

(Citations and punctuation omitted.) *McWay v. McKenney's, Inc.*, 359 Ga. App. 547, 547-548 (859 SE2d 523) (2021). Because jurisdiction is a question of law, we apply a de novo review. *In re Estate of Cornett*, 357 Ga. App. 310, 313 (1) (850 SE2d 790) (2020).

So viewed, the record shows that this case originated as a dispute between former business partners, Millsap and Schulz, in connection with the creation of a movie studio on property in Atlanta. Smith was general counsel for Blackhall Real Estate, one of the companies holding the property on which the studio was built. During the course of the litigation between Millsap and Schulz, Smith and his firm Smith LLC (collectively Smith) also became counsel of record for Millsap and the other named defendant companies.[1] Eventually, the trial court ordered the dispute

---

[1] The defendants in that suit were Millsap and several companies Millsap owned. Schulz later sought to add other companies, including Blackhall Real Estate,

2

between Millsap and Schulz to arbitration and stayed the proceedings, but it retained jurisdiction to enter final judgment following the conclusion of arbitration.

Thereafter, Schulz and Millsap entered into an agreement to permit the sale of Blackhall Real Estate's land, with a portion of the proceeds distributed to Millsap and Schulz, and the remainder placed in the court registry. Smith moved to withdraw as counsel, and he filed an attorney's lien pursuant to OCGA § 15-19-14 (b), seeking compensation for his services rendered in negotiating the real estate transaction and defending Millsap in Schulz's suit.[2]

Millsap filed an emergency motion to cancel the lien, arguing that it was invalid, and that if it was not removed, the real estate deal would not close. Following a hearing, at which Millsap was represented by new counsel, the trial court granted the motion and cancelled the lien, but reserved ruling on the merits of any claim Smith might have for attorney fees against the defendants. Smith filed the instant

the company for which Smith served as general counsel. The trial court denied the motion to add defendants, thus Blackhall Real Estate was not a defendant in Schulz's suit. Nevertheless, Smith continued to represent Millsap.

[2] The trial court ultimately granted the motion to withdraw.

appeal, and then filed a motion for reconsideration of the trial court's order cancelling his lien, which the trial court also denied.[3]

1. Before we consider the merits of Smith's arguments regarding the cancellation of his lien, we first address whether we have jurisdiction over this appeal because there was no final order in the underlying case between Millsap and Schulz. Smith argues that we have jurisdiction under the collateral order doctrine because the issue of an attorney's lien has been completely decided and is separate from the underlying suit, and there is a likelihood that he will lose access to the funds if he has to wait for a final judgment in the underlying litigation. He compares the cancellation of an attorney's lien to the cancellation of a lis pendens, which would be directly appealable.

"It is well established that this Court has a solemn duty to inquire into our jurisdiction to review the errors enumerated on appeal, and it is a duty we do not take lightly." (Citation and punctuation omitted.) *Ford v. Ford*, 347 Ga. App. 233 (818 SE2d 690) (2018). Generally, we have jurisdiction over a direct appeal from a final order. OCGA § 5-6-34 (a) (1). Where there is no final order, a party must comply

---

[3] Apparently, since the case was docketed in this Court, the parties completed arbitration, and the trial court affirmed the arbitration award. The funds held in the trial court registry remain there pending the outcome of this appeal.

4

with the rules for an interlocutory appeal, which require obtaining a certificate of review from the trial court and permission from this Court to bring the appeal.[4] OCGA § 5-6-34 (b).

Nevertheless, in limited circumstances, a party may bring an appeal from an interlocutory order as if it were subject to a direct appeal under the "collateral order doctrine." See *Rivera v. Washington*, 298 Ga. 770, 774 (784 SE2d 775) (2016) (acknowledging that "a very small class of interlocutory rulings are effectively final in that they finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.") (citation omitted); see also *Cohen v. Beneficial Indus. Loan Corp.*, 337 U. S. 541, 545-547 (69 SCt 1221, 93 LEd 1528) (1949). When we consider whether a party may bring a direct appeal in this manner, our Supreme Court has directed that

> [t]he collateral order doctrine applies where an order (1) resolves an issue that is 'substantially separate' from the matter to be tried, (2) would result in the loss of an important right if review had to wait for a final judgment in the overall case, and (3) completely and conclusively decides the issue such that nothing in the underlying action can affect it.

---

[4] Smith did not seek a certificate of immediate review.

*State v. Rowe*, 308 Ga. 806, 810 (2) (b) (843 SE2d 537) (2020); see also *City of Dublin School Dist. v. MMT Holdings*, 351 Ga. App. 112, 115 (2), n. 3 (830 SE2d 487) (2019) (concluding that order denying request for release of tax funds would not be directly appealable under collateral order doctrine); *Drain v. Lee*, 350 Ga. App. 327 (825 SE2d 927) (2019) (creditor's post-judgment motion to compel discovery not directly appealable as collateral order). As we have explained, "[t]he crucial question in the context of the collateral order doctrine, however, is not whether an interest is important in the abstract; *it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders*." (Citation and punctuation omitted.) *Expedia v. City of Columbus*, 305 Ga. App. 450, 453 (1) (699 SE2d 600) (2010). More specifically,

> [t]he fact that a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final trial court judgment is not sufficient to satisfy the requirement that an order be effectively unreviewable. Where effective relief would be available on appeal from a final judgment, therefore, Georgia's appellate courts have routinely required litigants to wait until after final judgment to vindicate even those rights that are central to our adversarial system.

(Citations and punctuation omitted.) *Settendown Pub. Utility v. Waterscape Utility*, 324 Ga. App. 652, 656 (751 SE2d 463) (2013); see also *Firestone Tire & Rubber Co.*

6

*v. Risjord*, 449 U. S. 368, 376 (II) (101 SCt 669, 66 LE2d 571) (1981) (with regard to the "effectively unreviewable" prong, the Court explained that "[t]o be appealable as a final collateral order, the challenged order must constitute a complete, formal, and, in the trial court, final rejection, of a claimed right where denial of immediate review would render impossible any review whatsoever.") (citations and punctuation omitted.). Although we may consider federal law when determining whether the collateral order doctrine applies, *Warren v. State*, 297 Ga. 810, 811, n. 2 (778 SE2d 749) (2015), our Supreme Court has also cautioned that "the jurisdiction of the courts of Georgia is not a federal issue upon which the decision of [federal courts] would be controlling, but derives from the constitutional and statutory law of this state."[5]

---

[5] As our Supreme Court has explained,

[t]he scheme for appellate interlocutory review is legislative in nature, and provides ample opportunity for review in appropriate cases . . . . In the event that the General Assembly determines that the established framework does not adequately safeguard the interests of those who assert [an attorneys lien], it is for that body to change it.

*Rivera*, 298 Ga. at 778.

7

(Citation omitted.) *Rivera*, 298 Ga. at 776.[6] With these guiding principles in mind, we turn to whether an order cancelling an attorney's lien is directly appealable under the collateral order doctrine.

This question presents an issue of first impression in our courts. Attorney's liens are authorized under OCGA § 15-19-14. "Being in derogation of the common law, lien laws, including the attorney's lien statute, must be strictly construed." *Ellis, Funk, Goldberg, Labovitz & Dokson, P.C. v. Kleinberger*, 235 Ga. App. 360, 361 (1) (509 SE2d 660) (1998). As we have explained, "liens exist to ensure that an attorney is compensated for the fruits of his labor and skill whether realized by judgment or

---

[6] We note that federal courts are split as to whether attorney's liens fall within the collateral order doctrine. Compare *Ellis v. Israel*, 12 F3d 21, 23 (2d Cir. 1993) (lien not reviewable under collateral order doctrine), and *In re Kruckenberg*, 160 B. R. 663, 665 (D. Kan. 1993) (applying general rules of finality and finding order denying motion to avoid lien was not directly appealable as collateral order), with *Joffe v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P. C.*, 827 Fed. Appx. 35, 37 (2d Cir. 2020) (unpublished) (holding, without discussion, that denial of order to affix attorney lien was collateral order); *Kaibel v. Municipal Bldg. Comm.*, 742 F3d 1065, 1067 (I) (8th Cir. 2014) (holding that denial of motion to establish attorney lien was subject to collateral order doctrine because it was separate from merits, effectively unreviewable on appeal, and involved an important right); *United States v. Metsch & Metsch, P. A.*, 187 Fed. Appx. 946, 947 (11th Cir. 2006) (unpublished) (summarily finding that denial of motion to enforce lien was directly appealable as collateral order); *Williams v. Katz*, 23 F3d 190, 192 (7th Cir. 1994) (order denying non-party employer's motion to intervene to enforce lien against any judgment in underlying malpractice case was immediately appealable as a collateral order); see also Wright & Miller, Federal Practice & Procedure § 3914.21, n. 60.

decree, or by virtue of an award, or in any other way, so long as they are the result of his exertions." (Citation and punctuation omitted.) *Tolson v. Sistrunk*, 332 Ga. App. 324, 329 (1) (772 SE2d 416) (2015).

Here, Smith sought to impose the lien under OCGA § 15-19-14 (b) on any money obtained as part of the real estate deal. Under OCGA § 15-19-14 (b), an attorney has the right "to impose a lien upon actions, judgments, and decrees for money, and prevents the satisfaction of such an action, judgment, or decree until the claim of the attorney for his fees is fully satisfied."[7] (Citations and punctuation omitted.) *Howe & Assocs. P.C. v. Daniels*, 280 Ga. 803, 804 (631 SE2d 356) (2006). As we have explained, "[a]n attorney's lien on a claim for money, i.e., a charging lien, is the equitable right of the attorney to recover his fees and costs due him for his services, and may be satisfied out of the judgment obtained by his professional services." (Citations and punctuation omitted.) *Tolson*, 332 Ga. App. at 328-329 (1). Thus, for a charging lien to come into existence, the attorney must have been employed as counsel; the attorney's work in that case lead to a recovery in the client's favor; and the recovery perfected the lien. See *Ramsey v. Sumner*, 211 Ga. App. 202,

---

[7] In contrast, under § 15-19-14 (c), an attorney may impose a lien on fees for property recovered.

9

204 (3) (438 SE2d 676) (1993); see also *In re Douglas Asphalt Co.*, 483 B. R. 560 (Bankr. S.D. Ga. 2012); Lonnie E. Griffith, Jr. and Thomas Smith, "Money Judgments Subject to Attorneys' Charging Liens," Ga. Proc. Court Systems and Types of Actions § 3.180.

Upon considering the nature of the attorney's lien, we conclude that the trial court's order cancelling Smith's attorney's lien fails to satisfy the collateral order doctrine. Pretermitting whether the attorney's lien is "substantially separate" from the underlying law suit, Smith cannot show that he will lose an important right or that the trial court's order completely decided the issue. *Rowe*, 308 Ga. at 810 (2) (b).

(a.) *Whether there would be a loss of an important right*.

Smith cannot show that he will lose an important right if he is required to wait for a final order to appeal. Although the trial court cancelled the attorney's lien, it did not rule on the merits of Smith's claim for fees. Smith argues that he will lose his right to the funds because Blackhall Real Estate will be insolvent once the deal closes.[8] However, counsel admitted at the hearing that the money would remain in the registry and the issue of attorneys fees could be considered as part of the arbitration.

---

[8] According to the parties, the deal has closed, there has been a ruling in the underlying arbitration, and the proceeds remain in the court's registry.

Because the money has not been disbursed, and the trial court has not ruled on the merits of Smith's claim for attorney fees, Smith cannot show that he will lose his right, if any, to the funds if he is unable to bring his appeal at this stage of the proceedings.[9] See *Richardson–Merrell, Inc. v. Koller*, 472 U. S. 424, 430-431 (II) (105 SCt 2757, 86 LE2d 340) (1985) ("The collateral order doctrine is a narrow exception whose reach is limited to trial court orders affecting rights that will be *irretrievably lost* in the absence of an immediate appeal.") (citations and punctuation omitted; emphasis supplied); *Sain v. Isles at Bayshore Master Assn.*, Case No. 14-20338-MC, 2014WL357200, at *3 (III) (A) (S. D. Fla. 2014) (non-final bankruptcy orders were not directly appealable under collateral order doctrine because orders were not "effectively unreviewable"); *In re Kruckenberg*, 160 B. R. 663, 665 (D. Kan. 1993) (applying traditional rule of finality, bankruptcy court order denying motion to avoid lien was not directly appealable under as collateral order); compare *Rowe*,

---

[9] Notably, other orders awarding attorney fees are subject to discretionary or interlocutory procedures instead of being directly appealable. See *Eidson v. Croutch*, 337 Ga. App. 542, 544-545 (788 SE2d 129) (2016) (declining to apply collateral order doctrine to appeal from award of attorney fees under OCGA § 9-15-14 in absence of final order in underlying litigation); see also *In re Estate of Reece*, 360 Ga. App. 364, 364-366 (861 SE2d 169) (2021) (order denying attorney fees in estate case was not a final order and thus appellant was required to comply with interlocutory procedures); OCGA §§ 5-6-34 (b); 9-15-14.

308 Ga. at 810 (2) (b) (State would lose important right if order was not immediately appealable because it would be forced to violate its own regulation or be held in contempt). Because Smith cannot show that he would lose his rights, the trial court's order was not appealable under the collateral order doctrine.

(b.) *Whether the order completely and conclusively decided the issue.*

As to this prong, the order did not completely or conclusively decide the issue because, although it cancelled the lien, it left open the possibility of Smith's entitlement to the money he sought to encumber. Again, the trial court has not ruled on the merits of Smith's claim for fees, nor has it disbursed the funds being held in the court registry. The question of whether Smith may be entitled to fees — and in what amount — remains pending and is wholly contingent upon the underlying litigation. Smith contends that he is owed money for his work preparing and negotiating the deal in which the property was sold, as well as for work he did defending Millsap in Schulz's suit and for Millsap personally. Millsap, in contrast, alleges that Smith has been paid what he is due under his contract with Blackhall Real Estate. The resolution of this dispute remains pending in the trial court. *Risjord*, 449 U. S. at 376 (II) ("[t]o be appealable as a final collateral order, the challenged order must constitute a complete, formal, and, in the trial court, final rejection, of a claimed

12

right where denial of immediate review would render impossible any review whatsoever.") (citations and punctuation omitted.); see also *Ramsey*, 211 Ga. App. at 204 (3); see also *In re Douglas Asphalt Co.*, 483 B. R. 560. Moreover, should the trial court determine that Smith is not entitled to any fees, the lien would be irrelevant. See generally *Griner v. Foskey*, 158 Ga. App. 769, 771 (1) (b) (282 SE2d 150) (1981). As a result, on these facts, we conclude that the order cancelling the charging lien does not fall within the collateral order doctrine. *Ellis v. Israel*, 12 F3d 21, 23 (2d Cir. 1993) (grant of attorney lien filed in underlying suit was not directly appealable under collateral order doctrine because client had not shown that fee dispute had been resolved or that he would be unable to obtain review after final judgment in underlying suit); see also *Bevill v. Schutte*, 362 P3d 805 (II) (Haw. Ct. App. 2015) (unpublished) (order granting or denying attorney's motion for satisfaction of a lien is an interlocutory order not directly appealable under the collateral order doctrine).

This conclusion is further supported by Smith's own motion to supplement the record on appeal. There, Smith argued that the final arbitration order, motion to vacate that order, transcripts of proceedings, and the trial court's decision "would be of assistance to this Court in issuing its decision on the matters before it in this

13

case."[10] The suggestion that subsequent orders are relevant implies that the issue of the lien could be affected by the underlying litigation. *Fein v. Chenault*, 330 Ga. App. 222, 229-230 (767 SE2d 766) (2014) (order disqualifying counsel was not appealable under collateral order doctrine because it could involve the merits of the case).[11] We therefore conclude that, under the specific facts of this case, the order cancelling Smith's charging lien would not fall into those "small classes of cases" that are directly appealable. *Rivera*, 298 Ga. at 774.

---

[10] Smith has requested several times that we supplement the record with these orders, all of which postdate his notice of appeal. We denied those motions. *Schmitz v. Barron*, 312 Ga. 523, 525 (2) (863 SE2d 121) (2021); see also *Givens v. Ichauway, Inc.*, 268 Ga. 710, 712 (1) (493 SE2d 148) (1997) ("[A]ppellate courts will review only evidence presented to the trial court before its ruling on the motion.") (citation and punctuation omitted).

[11] Smith contends, however, that we should consider the attorney's lien as equivalent to a lis pendens, the cancellation of which *is* directly appealable under collateral order doctrine. See *Jay Jenkins Co. v. Financial Planning Dynamics*, 256 Ga. 39, 42 (3) (343 SE2D 487) (1986); *Triple Eagle Assocs. v. PBK, Inc.*, 307 Ga. App. 17, 19, n. 4 (704 SE2d 189) (2010). But a lis pendens attaches to specific real property, which is not fungible like money. See *Scroggins v. Edmondson*, 250 Ga. 430, 431-432 (1) (c) (297 SE2d 469) (1982); see also OCGA § 15-19-14 (b); compare OCGA § 15-19-14 (c). Moreover, when a lis pendens is cancelled, there is nothing left in the suit that can affect it. *Scroggins*, 250 Ga. at 432 (1). But in Smith's case, the trial court reserved the issue of attorney fees. Alternatively, Smith argues that the order is a final judgment as to his claims and would be directly appealable on that basis. This claim is without merit, as it is undisputed that the trial court has not ruled on the merits of whether Smith is entitled to any fees.

14

2. Having concluded that we lack jurisdiction over this appeal, we need not address the merits of Smith's argument that the trial court erred in cancelling his lien. Accordingly, for the reasons discussed above, we dismiss this appeal for lack of jurisdiction.

*Appeal dismissed. Dillard, P. J., and Mercier, J., concur.*